24443

Flossie Mae FANNING and Nathaniel Fanning, Sr., Individually and as Representatives of All Persons Similarly Situated, Collectively Designated as John Doe and Jane Doe, Appellants v. FRITZ'S PONTIAC-CADILLAC-BUICK, INC. and C & S National Bank, Respondents.

(472 S.E. (2d) 242)

Supreme Court

*Christopher G. Isgett,* of *Lee, Isgett, Eadon & Popwell* and *Cheryl F. Perkins,* of *James C. Anders & Associates,* Columbia, *for appellants.*

*David W. Robinson, II* and *Thomas W. Bunch, II,* both of *Robinson, McFadden & Moore,* Columbia, *for respondent C & S National Bank,* and *Mr. Fritz Waidner* of *Fritz's Pontiac-Cadillac-Buick, Inc., pro se,* of Newberry.

Heard Apr. 2, 1996.

Decided June 10, 1996; Reh. Den. July 15, 1996.

WALLER, Justice:

The sole issue in this class action is whether Fritz Cadillac[1] violated the South Carolina Consumer protection Code (SCCPC), S.C. Code Ann. § 37-1-101 et. seq. (1989), in charging an $87.00 "Procurement Fee" on automobiles purchased between 1983 and 1989. The circuit court found no violation of the SCCPC. We affirm.

---

[1] C & S' successor, NationsBank, is also a respondent.

## FACTS

Appellants, the Fannings, purchased a 1989 Fleetwood Cadillac from Fritz in June, 1989. Included in the "Total Cash Price" of the car was an $87.00 "procurement fee." The record reflects two invoices prepared by Fritz: one specifically enumerates the $87.00 fee in arriving at a total cash price, the other does not enumerate the fee but includes the fee in the price of the car.[2] It is undisputed that the $87.00 fee was charged to all of Fritz' customers, cash and credit alike.

The Fannings instituted this action in 1990 claiming, among other things, that the $87.00 procurement fee was in violation of the SCCPC in that it was an illegal "additional charge" under S.C. Code Ann. § 37-2-202 (1989) and that it was unconscionable under § 37-5-108 (1989). On motion of the parties, the trial court granted partial summary judgment, ruling that the $87.00 fee was not prohibited by the SCCPC.[3]

## DISCUSSION

The purpose of the SCCPC is to clarify the law governing consumer credit and to protect consumer buyers against unfair practices by suppliers of consumer credit. S.C. Code Ann. § 37-1-102 (1989). Chapter 2 of Title 37 governs "Consumer Credit Sales." Section 37-2-110 defines "cash price" as:

> the price at which goods, services, or interest in land are offered for sale by the seller to cash buyers in the ordinary course of business, and may include (1) applicable sales, use, and excise and documentary stamp taxes, (2) the cash price of accessories or related services such as delivery, installation, servicing, repairs, alterations and improvements and (3) amounts actually paid or to be paid by the seller for registration, certificate of title, or license fees.

This section defines the true cash price at which goods are offered for sale in order that consumers may make a meaningful

---

[2] Fritz began preparing "duplicate" invoices when the bank, upon the advice of the consumer advocate Steve Hamm, advised that the fees were not, in his opinion, permissible under the SCCPC. Fritz disagreed with Hamm's position.

[3] The Fannings causes of action for fraud and unfair trade practices are still pending in circuit court.

choice among credit sellers and the true charge actually imposed for credit; this section also prevents sellers' attempts to "bury" charges actually imposed for credit in overstating cash price. *See* Haynsworth, *The South Carolina Consumer Protection Code* 54, Comments to § 37-2-110 (2d Ed. 1990). A consumer may rebut the presumption that the cash price disclosed is the true cash price by showing that the cash price disclosed is not offered to cash buyers in the ordinary course of business. *Id.* Further, a seller has the option of either including the charges enumerated in (1), (2), and (3) in the cash price or stating them separately. In either case, the sum on which the credit service charge is based will be the same since the amount financed includes both the cash price and the enumerated charges.[4] *Id.*

The Fannings contend the "procurement fee" is an ■ unauthorized "additional fee" and is therefore illegal.

S.C. Code Ann. § 37-2-202, permits a seller to charge, in addition to total cash price, certain specified fees. We agree with the Fannings that the procurement fee is not within the permissible "additional charges" as defined in section 37-2-202. However, in our opinion, the fee is not an "additional charge" but is, rather, an element of the negotiated **cash price** of the vehicle.

The dilemma in this case results from the failure to ■ make a clear distinction between the portion of the transaction where the **cash price in negotiated** versus the portion of the transaction which relates to the **extension of credit**. Here, it is undisputed that the procurement fee was charged to all of Fritz's customers in establishing total cash price. Moreover, it is clear that the Fannings were advised of the fee prior to obligating themselves under the credit agreement.[5] Accordingly, the fee was not an impermissible "additional fee" under § 37-2-202. *See, e.g., Johns v. Ford Motor Credit Company*, 49 Ohio St. (3d) 84, 551 N.E.

---

[4] Section 37-2-111 defines the "amount financed" as the cash price of goods, less down payment and, **if not included in cash price**, any applicable taxes, amounts paid by the seller for registration, title, etc., and additional charges permitted by section 37-2-202.

[5] Invoice # 000681 lists the price of **car** as $32,044, then adds in the procurement fee to arrive at a **total cash price**. This is the same **total cash price** as is reflected on the invoice sent to the bank. The worksheet prepared by Fritz's salesman also disclosed the procurement fee.

(2d) 179 (1990); *Ford Motor Credit Company v. Gamez*, 617 S.W. (2d) 720 (Tex. Civ. App. 1980); *Stasher v. Harger-Haldeman*, 58 Cal. (2d) 23, 22 Cal. Rptr. 657, 372 P. (2d) 649 (1962) (no violation of state statutory requirements of disclosure where record discloses fees were fully disclosed to purchasers prior to entering installment contracts).[6]

Finally, the Fannings contend the procurement fee is unconscionable under S.C. Code Ann. § 37-5-108. We disagree.

Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Jones Leasing v. Gene Phillips and Assoc.*, 282 S.C. 327, 318 S.E. (2d) 31 (Ct. App. 1984). In the case of consumer credit sales, courts are to consider the gross disparity between the prices of the property or services sold, and the value of property or services measured by the price at which similar property or services are readily obtainable by like consumers are factors to be considered in determining unconscionability. S.C. Code § 37-5-108(4)(c).

Here, as noted, the fee was included in the total cash price of the vehicle and the Fannings were free to negotiate prior to obligating themselves under the contract. Clearly, they had a meaningful choice in accepting the fee,[7] such that it was not unconscionable within the meaning of the SCCPC.

## CONCLUSION

The procurement fee charged in this case was part of the "total cash price" which Fritz charged to **all** customers. The prohibition in the SCCPC against "additional charges" does

---

[6] Further, to accept the Fannings' contention that the only permissible inclusions to "cash price" are those specifically enumerated in § 37-2-110 would prevent car dealers, and other merchants, from including expenses, overhead, profit, etc., from total cash price. This would produce an illogical result, not intended by the SCCPC.

[7] Moreover, the Consumer Advocate had advised all car dealers against charging procurement fees. The fact that a number of dealers had ceased charging procurement fees in reliance upon this advice does not render the use of such fees unconscionable for those dealers who did not accept the advocate's advice.

not preclude inclusion of such a fee in the negotiated total cash price, which credit and cash customers alike are free to negotiate. Accordingly, we find no violation of the SCCPC[8] and the ruling of the trial court is

Affirmed.

FINNEY, C.J., MOORE and BURNETT, JJ., and LUKE N. BROWN, JR., Acting Associate Justice, concur.

---

[8] By our holding, we do not imply that inclusion of such fees may not be attacked on other grounds, such as claims for fraud, misrepresentation or unfair trade practices. The Fannings have done so here and their claims remain pending in circuit court. We express no opinion as to the merit of those claims.