UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BALCOR EQUITY PROPERTIES XVIII, a
Real Estate Limited Partnership, as
successor in interest to Hidden
Lakes Partners, as successor in
interest to the Lakes Partners
Limited Partnership,
                    *Plaintiff-Appellee,*

        v.

CALIGO LIMITED, now known as
Philip Automotive, Limited,
                    *Defendant-Appellant.*

No. 01-1913

BALCOR EQUITY PROPERTIES XVIII, a
Real Estate Limited Partnership, as
successor in interest to Hidden
Lakes Partners, as successor in
interest to the Lakes Partners
Limited Partnership,
                    *Plaintiff-Appellant,*

        v.

CALIGO LIMITED, now known as
Philip Automotive, Limited,
                    *Defendant-Appellee.*

No. 01-1960

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-97-1494-6-20)

Argued: June 6, 2002

Decided: August 13, 2002

Before WIDENER and WILKINS, Circuit Judges, and
Frederick P. STAMP, Jr., United States District Judge of the
Northern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** W. Howard Boyd, Jr., GALLIVAN, WHITE & BOYD,
P.A., Greenville, South Carolina, for Appellant. James William
Logan, Jr., LOGAN, JOLLY & SMITH, L.L.P., Anderson, South
Carolina, for Appellee. **ON BRIEF:** Luanne Lambert Runge, GAL-
LIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for
Appellant. Michael T. Smith, LOGAN, JOLLY & SMITH, L.L.P.,
Anderson, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

### OPINION

PER CURIAM:

  Caligo Limited (Caligo) appeals a judgment in favor of Balcor
Equity Properties XVIII (Balcor) in a lawsuit arising out of a July 4,
1994 fire. Finding no error, we affirm.

### I.

  In early June 1994, Caligo began an industrial cleaning project in
Greer, South Carolina. Caligo staffed the project in part with employ-
ees from outside the Greer area and housed these employees in apart-

ments leased from Balcor. Caligo rented and signed leases for several apartment units, including Units 161 and 166.

The form leases signed by Caligo stated in pertinent part:

> 10. DAMAGE AND LOSS. You shall at all times exercise due care in the use of the Premises[.] . . . You agree to carry insurance covering all Your property located in the Premises and to indemnify Us from any damage or loss We may sustain because of any fire or the extinguishing of such fire originating in the Premises which damages Our Property[.]

J.A. 2010. The terms "fire" and "originating" were not defined in the leases.

During the evening of July 4, some Caligo employees residing in Units 161 and 166 were discharging fireworks onto the ground from their balconies. The employees subsequently began shooting bottle rockets and Roman candles at each other. Shortly afterward, the wooden deck of Unit 164—which was not leased by Caligo but which was situated between Units 161 and 166—caught on fire, and the resulting blaze caused more than $1,000,000 in damage to the complex.

Balcor had purchased fire insurance coverage for the apartment complex from four different carriers. After the fire, the carriers jointly paid Balcor $991,796.41, which represented Balcor's claimed damages less its $100,000 deductible. Balcor then instituted this action, claiming that Caligo was liable for the conduct of its employees in discharging the fireworks and seeking to recover damages in the full amount of the loss caused by the fire. Balcor alleged, *inter alia*, claims of breach of paragraph 10 of the contract, negligent supervision, and negligent retention. Caligo generally denied Balcor's claims and also asserted, as is relevant here, that the action was barred by South Carolina Code § 38-75-60, which precludes suits by insurers against tenants for damage to leased real or personal property unless the damage is caused intentionally or recklessly. *See* S.C. Code Ann. § 38-75-60 (Law. Co-op. 2002).

Caligo moved to join Balcor's insurance carriers as involuntary plaintiffs. *See* Fed. R. Civ. P. 19(a). After the carriers stipulated that they would be bound by the judgment, the district court denied the joinder motion. The district court also struck Caligo's § 38-75-60 defense, ruling that the statute did not apply to Balcor's suit.

The parties cross-moved for summary judgment. Following a hearing, the court granted judgment in favor of Balcor on its claim based upon Paragraph 10 of the lease and denied Caligo's motion regarding that claim. The court reasoned that Caligo had a contractual duty to indemnify Balcor for the fire damage because, as a matter of law, the fire originated on the premises leased by Caligo. The district court also granted summary judgment to Caligo on Balcor's claims of negligent supervision and negligent retention.

Caligo appealed to this court, contending that the district court erred in granting summary judgment to Balcor regarding Paragraph 10, in denying its motion to join Balcor's insurance carriers as involuntary plaintiffs, and in striking its statutory defense. Balcor cross-appealed, maintaining that the district court erred in granting summary judgment against it on its negligent supervision and negligent retention claims.

We reversed the grant of summary judgment on the paragraph 10 claim ("the origination claim"), holding that the language of the paragraph was at least ambiguous and therefore that the district court erred in ruling as a matter of law that the fire originated on the premises leased by Caligo. *See Balcor Equity Properties XVIII v. Caligo Ltd.*, 238 F.3d 410, 2000 WL 1853087, at *2-*3 (4th Cir. 2000) (per curiam) (unpublished table decision) (*Balcor I*). We also concluded that the district court correctly ruled that South Carolina Code § 38-75-60 did not bar the origination claim because it bars insurers', not landlords', claims. *See id.* at *3. We further determined that the statute would not have barred Balcor's claim even had Balcor's insurance carriers been joined as involuntary plaintiffs. *See id.* at *3 n.3. On that ground, we held that any error in denying Caligo's motion to join Balcor's insurance carriers was harmless. *See id.* We also affirmed the order granting summary judgment against Balcor on its negligent supervision and retention claims. *See id.* at *3-*4.

On remand to the district court, on the day before trial, Caligo admitted for the first time that it had failed to exercise due care in its use of the premises and that its breach had proximately caused Balcor's fire damage. On the basis of this admission, Balcor moved for judgment as a matter of law on its breach of contract claim on the ground that the facts admitted established that Balcor's fire damage was the proximate result of Caligo's breach of its contractual duty to use the premises with due care ("the due care claim"). The district court reserved judgment on the motion, and the case was tried on stipulated facts, the only jury issue being where the fire originated. The district court denied motions by Caligo for judgment as a matter of law on that issue, and the jury found that the fire originated on the premises leased by Caligo.

Following the jury verdict, the district court addressed the due care claim. Caligo argued that Balcor had not pled any cause of action based solely on the "due care" language, to which Balcor responded that it had pled a cause of action based on Paragraph 10, which contained the language. In any event, the district court concluded that to the extent that Balcor's pleadings had not sufficiently alleged the due care claim, an amendment to the pleadings would be allowed, and the district court subsequently granted judgment as a matter of law to Balcor on this claim. On this basis, and on the basis of the jury verdict on the origination claim, judgment was entered in Balcor's favor for $1,050,000, which represented the entire amount of Balcor's fire damage.

Caligo moved to amend the judgment, arguing, as is relevant here, that it should be responsible only for the $100,000 in fire damage for which Balcor was not compensated by insurance benefits. Caligo contended that Balcor's insurance carriers should have been joined as involuntary plaintiffs, and if they had been, South Carolina Code § 38-75-60 would have barred recovery of the amounts paid by the insurers to Balcor. The district court denied the motion, noting that we had rejected that argument in *Balcor I*.

## II.

Caligo first argues that the district court erred in granting judgment as a matter of law to Balcor on the due care claim. We disagree.[1]

---

[1]Because we reject Caligo's challenge to the judgment as a matter of law on the due care claim, we do not address the parties' arguments regarding the other liability theories.

We review an order granting judgment as a matter of law de novo. *See Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir.), *cert. denied*, 122 S. Ct. 342 (2001). Because the district court sat in diversity, we must apply South Carolina law and predict how the South Carolina Supreme Court would decide the issue. *See Doe v. Doe*, 973 F.2d 237, 240 (4th Cir. 1992). Here, two principles of South Carolina law are relevant. First, when a contract term is unambiguous, the term must be given its plain meaning. *See Warner v. Weader*, 311 S.E.2d 78, 79 (S.C. 1983). Second, absent an agreement to the contrary, a party is liable for any damages following as a natural and proximate result of its breach of contract. *See Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962); *Ancrum v. Camden Water, Light & Ice Co.*, 64 S.E. 151, 156 (S.C. 1909).

In its entirety, paragraph 10 of the lease provides as follows:

> 10. DAMAGE AND LOSS. *You shall at all times exercise due care in the use of the Premises[.]* You are taking occupancy of the Premises and accepting the Premises "as is" and "where is[.]" You agree that We shall not be liable to You, your family, your guests or any other person for any loss[,] injury or damage to person or property arising out of the failure of any appliance, fixture, the roof[,] any plumbing, heating, air conditioning, electric, gas, water or sewerage systems in or about the Premises, or caused by any casualty or catastrophe including without limitation storm, flood[,] fire, criminal acts, moths, termites, or vermin, or caused by latent defects, or from any other cause whatsoever, whether or not due to negligent acts or omissions by You, your family and guests or by any third parties, including without limitation other occupants of this Apartment Community, and You assume all risk of and agree to indemnify Us from any such loss, injury or damage[.] Further, the use of the parking spaces, storerooms, laundry facilities, swimming pool, recreational facilities, community buildings, and all other common areas in this Apartment Community shall be at Your own risk and We shall not be liable to You, your family, your guests or any other person for any loss, injury or damage to person or property arising out of use of the foregoing, from any cause whatsoever, and You

assume all risk of and agree to indemnify Us from any such loss, injury or damage[.] *You agree* to carry insurance covering all Your property located in the Premises and *to indemnify Us from any damage or loss We may sustain because of any fire or the extinguishing of such fire originating in the Premises which damages Our Property.*

J.A. 2010 (emphasis added).

Caligo does not dispute that Paragraph 10 contractually obligated it to exercise due care in using the leased premises, that Caligo breached that duty, and that the damages for which it has been held liable were the natural and proximate result of its breach. Caligo also does not assert that the district court abused its discretion in allowing amendment of the complaint to include the due care claim. Caligo's only contention supporting its challenge to the judgment as a matter of law is that the due care language in Paragraph 10 "must be read in conjunction with the indemnification provision at the end of paragraph 10 to mean that Caligo is only required to indemnify Balcor for fire damage which originates in the leased premises and is caused by Caligo's failure to exercise due care." Br. of Appellant/Cross-Appellee at 28.

We conclude, however, that the duty to exercise due care in using the premises is plainly an independent duty, unrelated in any significant way to Caligo's duty to indemnify Balcor for damage from fires originating in Caligo's leased premises. Paragraph 10 unambiguously sets forth a series of provisions concerning damage and loss. There is no indication in the language that these seemingly independent provisions in fact do not stand alone. And, indeed, they are separated in the lease by several undeniably independent provisions.

Caligo argues that if the first and last provisions are read to create separate duties, the last sentence will be reduced to surplusage. *See Gibbes Mach. Co. v. Johnson*, 61 S.E. 1027, 1028 (S.C. 1908) (adopting a contract construction that would avoid reducing certain language to surplusage). Caligo is mistaken. Without the last sentence, Caligo would not be required to indemnify Balcor for damage from a fire originating on the leased premises unless Balcor could prove that Caligo's lack of due care caused the fire. The presence of the pro-

vision obligates Caligo to indemnify Balcor for damage from any fire originating on Caligo's leased premises, regardless of fault.

Caligo further contends that obligating it to indemnify Balcor for some fires not shown to have been proximately caused by Caligo's lack of due care would be an absurd result. *See Farr v. Duke Power Co.*, 218 S.E.2d 431, 434 (S.C. 1975) (stating that constructions of contractual terms creating absurd results are disfavored). However, we fail to see the absurdity in the parties' allocation of the risk of loss. *Cf. Campbell v. Beacon Mfg. Co.*, 438 S.E.2d 271, 272 (S.C. Ct. App. 1993) (holding that when security company agreed to hold customer harmless for any damages "arising out of" the acts of security company's employees, security company was liable for employee's actions in starting fire even if actions causing fire were outside scope of employee's employment (internal quotation marks omitted)). Caligo was arguably best positioned to prevent a fire from originating on its leased premises, and Caligo would certainly have been able to purchase insurance to cover its indemnification duties.

Caligo similarly argues that if the first and last sentences of Paragraph 10 are read to create independent duties, the parties' agreement that Caligo would indemnify Balcor for all damage resulting from fires originating on the leased premises is unconscionable and therefore unenforceable. We seriously doubt that such an agreement is unconscionable under South Carolina law. *Cf. Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996) ("Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them."). However, even if the indemnity provision were unenforceable, that would in no way negate Caligo's duty to exercise due care in using the leased premises. The lease specifically provides that it

> shall if possible be construed consistently with all laws and public policies, and if any court of competent jurisdiction determines that it is impossible to so construe any provision of this Lease and consequently holds that provision to be invalid, then such holding shall in no way whatsoever affect the validity of any other provisions of this Lease[.]

J.A. 2010.

Caligo finally points to the last sentence of Paragraph 10 and several other provisions of the lease and argues that the fact that remedies were explicitly provided for some contractual breaches indicates that the parties intended that there would be no contractual remedy for damage caused by Caligo's simple lack of due care.[2] Caligo similarly argues that the explicit inclusion in the contract of a remedy for Balcor for fire damage caused by a fire originating on the leased property indicates that the parties intended that there would be no remedy for any fire damage caused by a fire not originating on the leased property. The lease explicitly negates these inferences, however, and states that "[t]he remedies provided in this Lease shall be cumulative and shall not in any way abridge, modify or preclude any other rights or remedies to which We are entitled at law or in equity." *Id.*

For all of these reasons, we conclude that the lease placed an unqualified duty on Caligo to exercise due care in its use of the leased premises and in no way limited the legal remedies available to Balcor for Caligo's breach of that duty.

### III.

Caligo also argues that the district court erred in denying its motions to join Balcor's insurers as involuntary plaintiffs. Caligo contends that because Balcor's insurers have paid Balcor $991,796.41 as a result of the fire, these insurers owned a portion of Balcor's claim. Caligo continues that had the insurers been joined as involuntary plaintiffs, they would have been prohibited under South Carolina Code § 38-75-60 from asserting their claims, and therefore Balcor's damages would have been reduced by $991,796.41. As the district court correctly ruled, we rejected this precise argument in *Balcor I* when we held that any error in not joining Balcor's insurers did not prejudice Caligo because the "statute at most would have prevented the insurance carriers from stating a claim against Caligo, but would have had no effect on Balcor's cause of action." *Balcor I*, 2000 WL

---

[2]At oral argument, Caligo argued that the lease would entitle Balcor to evict Caligo for a breach of its duty to exercise due care but cited no language in the lease supporting that assertion.

1853087, at *3 n.3. That ruling is the law of the case. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).

In any event, Caligo's argument that Balcor's damages would have been reduced if its insurers had been joined as involuntary plaintiffs is simply incorrect. In *partial* subrogation cases, the insured's right of action against the wrongdoer is "single and indivisible, even though the insurer is subrogated to the rights of the insured to the extent of the loss paid." *Spearman v. J & S Farms, Inc.*, 755 F. Supp. 137, 141 (D.S.C. 1990); *see Pringle v. Atl. Coast Line R.R.*, 47 S.E.2d 722, 724 (S.C. 1948). Additionally, South Carolina follows the "collateral source rule," under which compensation from insurance proceeds will not reduce the amount of damages for which the wrongdoer is liable. *See Citizens & S. Nat'l Bank of S.C. v. Gregory*, 463 S.E.2d 317, 318 (S.C. 1995); *Otis Elevator, Inc. v. Hardin Constr. Co. Group*, 450 S.E.2d 41, 45-46 (S.C. 1994) (applying rule in contractual indemnity setting). Accordingly, as we determined in *Balcor I*, any error in not joining Balcor's insurers as involuntary plaintiffs did not increase the amount of damages for which Caligo could be liable.

## IV.

In sum, because we conclude that the district court correctly granted judgment as a matter of law to Balcor on its due care claim and because Caligo was not prejudiced by the denial of its joinder motion, the judgment of the district court is affirmed.

*AFFIRMED*