*390 Justice KITTREDGE.
I respectfully dissent. As a matter of law, there was no violation of the Closing Fee Statute.[25] I would reverse the $2,891,572 verdict against J.L.H. Investments, LP, also known as Hendrick Honda.
I.
The General Assembly enacted the Closing Fee Statute in 2000. Prior to the passage of that statute, automobile dealers routinely included in the price of a vehicle a closing fee, sometimes referred to as a procurement fee. In 1996, this Court addressed a challenge to a dealer-imposed $87 closing fee in Fanning v. Fritz’s Pontiac-Cadillac-Buick, Inc., 322 S.C. 399, 472 S.E.2d 242 (1996). The Fannings claimed, among other things, that the closing fee violated the South Carolina Consumer Protection Code (SCCPC), which makes up title 37 of the South Carolina Code. Id. at 401, 472 S.E.2d at 244. We rejected the Fannings’ claim, reasoning that, because the fee “was charged to all of Fritz’s customers in establishing total cash price,” it was “an element of the negotiated cash price of the vehicle.” Id. at 402, 472 S.E.2d at 244. The Fannings’ unconscionability claim was similarly rejected.[26] Id. at 403, 472 S.E.2d at 245.
The legislature responded to our decision in Fanning by adding the Closing Fee Statute to the SCCPC. The Closing Fee Statute provides:
Every motor vehicle dealer charging closing fees on a motor vehicle sales contract shall pay a one-time registration fee of ten dollars during each state fiscal year to the Department of Consumer Affairs. The closing fee must be included in the advertised price of the motor vehicle, disclosed on the sales contract, and displayed in a conspicuous location in the motor vehicle dealership.
*391 S.C.Code Ann. § 37-2-307 (2015). In implementing the statute, the South Carolina Department of Consumer Affairs (Department) issued an “Administrative Interpretation” on June 7, 2001, setting forth the process and guidelines for automobile dealers to follow to ensure compliance with the statute:
The assessment of a “closing” or “documentation” fee (also occasionally denominated as an “administrative,” “processing,” or “procurement” fee) in a consumer credit sale of a motor vehicle is depend[e]nt on four factors: 1.) The dealer must pay the Department a registration fee each state fiscal year in the amount of ten ($10.00) dollars prior to the assessment of a closing fee; 2.) The existence of a closing fee must be disclosed on the sales contract; 3.) The closing fee must be disclosed in a statement displayed in a conspicuous location in the motor vehicle dealership; and 4.) If the closing fee is charged, and the vehicle is advertised, the closing fee must be included in the advertised price. A dealership may use the attached form to make its filing with the Department. A closing fee may only be assessed once these factors are met and the dealership has in its possession a date stamped copy of its disclosure stamped by the Department. The charging of a “closing,” “documentation,” or similar fee[ ] in connection with a consumer credit sale of a motor vehicle in the absence of any of these requirements constitutes the charging of an excess charge for Consumer Protection Code purposes.
S.C. Dep’t of Consumer Affairs, Administrative Interpretation 2.307-0101, at 1 (2001).
It is undisputed that Hendrick Honda complied with the Department’s Administrative Interpretation in every respect. Hendrick Honda: (1) timely paid the registration fee; (2) disclosed the closing fee on its sales contracts; (3) displayed the notice of a closing fee in a conspicuous place in the dealership; and (4) included the closing fee in the advertised price of each of its vehicles. The Department annually authorized Hendrick Honda to charge a closing fee, not to exceed a designated amount. Having complied with the Department’s Administrative Interpretation, there can be no liability under the SCCPC. See S.C.Code Ann. § 37-6-104(4) (“Except for refund of an excess charge, no liability is imposed *392 under this title for an act done or omitted in conformity with a rule of the administrator notwithstanding that after the act or omission the rule may be ... determined by judicial or other authority to be invalid for any reason.”); id. § 37-6-506(3) (“No provision of this title or of any statute to which this title refers which imposes any penalty on any creditor shall apply to any act done, or omitted to be done, in conformity with any rule or regulation so adopted, amended[,] or repealed or in conformity with any written order, opinion, interpretation!,] or statement of the Commission [on Consumer Affairs] or of the administrator, notwithstanding that such rule, regulation, order, opinion, interpretation!,] or statement may, after such act or omission ... be determined by judicial or other authority to be erroneous or invalid for any reason.”). Unlike the majority, I would give efficacy to the legislature’s placement of the Closing Fee Statute in the SCCPC. While Julie Freeman’s Complaint seeks recovery for an alleged violation of the Dealers Act,[27] she concedes there can be no violation of the Dealers Act without a violation of the Closing Fee Statute found in the SCCPC. Because there has been no violation of the Closing Fee Statute, I would reverse the judgment against Hendrick Honda.
II.
While my disposition of the appeal would not require further analysis, I add the following in response to the majority opinion.
As noted, all of the statutory and Department-imposed requirements of the Closing Fee Statute were satisfied when Freeman purchased her Honda Accord from Hendrick Honda. Freeman testified to the negotiation of the car’s purchase price and acknowledged she was fully aware that price includ *393 ed a $299 closing fee. In fact, far from feeling she had been taken advantage of, Freeman testified that she “was very happy at the time [she] bought the car.” Nonetheless, Freeman, individually and purportedly on behalf of other similarly aggrieved customers of Hendrick Honda, parlayed this transparent, “happy” vehicle purchase into an approximately $8,000,000 judgment.
Regarding the amount of a closing fee, the Department has provided little guidance. The Administrative Interpretation issued by the Department merely included a sample form dealers could use to provide notice to customers of the fee, which the form describes “as a means of reimbursing [the dealer] for certain overhead costs such as document retrieval and document preparation.” S.C. Dep’t of Consumer Affairs, supra. The sample notice goes on to inform consumers that the amount of the fee “depends on many factors, including all products and services bought with the vehicle.” Id. Suffice it to say, neither the terms of the statute nor the Department’s guidance represent a model of clarity. However, two certainties emerge concerning the Closing Fee Statute.
First, as noted above, dealers are given little guidance in determining what costs may or may not be included in a closing fee. This lack of guidance is at odds with ideal legal frameworks, which are designed to provide reasonably dis-cernable and objective criteria. In my view, the absence of known objective criteria renders it difficult to characterize a dealer’s closing fee as arbitrary. On the other hand, I acknowledge that the absence of known objective criteria should not be a license for dealers to charge a disguised profit. The legislature, whether by design or not, has entrusted the Department with the role of protecting consumers from such charges by requiring Department approval of dealers’ requests to charge closing fees. And, contrary to the majority’s suggestion, the Department does not merely rubber-stamp those requests. See id. at 2 (“Forms considered to be deceptive or to misstate the law will be rejected by the Department.”). Specifically, Danny Collins, General Counsel and then-Deputy of Regulatory Enforcement for the Department, testified to the Department’s rejection of an excessive closing fee request and indicated that the Department closely scrutinized others.
*394 Second, it is axiomatic that a closing fee must be predetermined, thus rendering it impossible for the fee to equal the actual closing costs associated with a particular transaction. I reject as meritless the trial court’s determination that the legislature intended the predetermined closing fee to equal the dealer’s precise closing costs in unknown, future transactions.
Even assuming Freeman may pursue a claim under the Dealers Act, a new trial would nevertheless be warranted due to the trial court’s erroneous construction of the Closing Fee Statute. While the trial court initially and properly found that a closing fee was of necessity predetermined, it further paradoxically found the closing fee must equal the actual dealer costs incurred in the transaction.[28] This latter erroneous finding, and the resulting jury instructions based on it, effectively required the jury to return a verdict in favor of Freeman. This becomes readily apparent upon reading excerpts from those instructions. Regarding the definition of a closing fee, the court charged the jury:
The dealer may only charge the buyer closing costs that are actually incurred and are a necessity to the closing[,] thus reimbursing the dealer for actual closing costs incurred. That is the definition that I charge you is the law in this case defining what a closing fee is under the statute.... ... If you determine that the costs charged [were] a closing fee under the statute and under the definition, that would pretty much be the end of your inquiry, because [the defendant] had complied with the law. If, however, you determine that it is not a closing fee, that the costs were not in connection with the closing of the transaction, as defined [how] I just said, then you have to decide whether or not [the defendant] has violated what we call the Dealers Act.
In the damages portion of the charge, the requirement that the closing fee must equal actual closing costs was made with even greater clarity:
[I]f the [defendant's closing fees exceeded the amount to necessarily reimburse the [defendant for his actual closing costs, then actual damages [are] a portion of that fee which exceeded the actual closing costs. So if you find that [the *395 plaintiff is] entitled to damages, obviously you’ve got a wide range in this case, anywhere from zero to two hundred ninety-nine dollars.
Hendrick Honda, of course, never contended that its closing fee mirrored the actual closing costs incurred in each transaction. By charging the jury that every cent of the closing fee had to be justified by a concomitant cost, Hendrick Honda was essentially charged out of court.[29]
The majority joins me in rejecting the trial court’s construction of the Closing Fee Statute and related jury instructions, which required the closing fee to exactly match the actual closing costs in each transaction. The majority freely acknowledges that “compliance with the ‘Closing Fee’ Statute does not require that the dealer hit the ‘bull’s-eye’ for each purchase.” I therefore do not understand the majority’s insistence on upholding this jury verdict, which was based on an erroneous jury instruction that required the closing fee to equal the “actual closing costs incurred.”
In sum, the legislature placed the Closing Fee Statute in the SCCPC, the provisions of which control the outcome of this case. I would reverse the trial court judgment on the basis of Hendrick Honda’s compliance with the Department’s Administrative Interpretation of those provisions. Moreover, even if I accepted the potential for a Dealers Act violation under these circumstances, the erroneous jury instruction would mandate reversal and remand for a new trial with a proper construction of the Closing Fee Statute, one that does not require the predetermined closing fee to equal the “closing costs that are actually incurred and are a necessity to the closing,” as the trial court charged the jury. Not only were Hendrick Honda’s actions not prohibited by statute, they were specifically approved. Under the Court’s ruling today, Hen- *396 drick Honda is being punished for doing exactly what South Carolina law permitted it to do.
Acting Justice James E. Moore, concurs.

. S.C.Code Ann. § 37-2-307 (2015).

. The Fanning Court nonetheless noted that its holding did "not imply that inclusion of such fees may not be attacked on other grounds, such as claims for fraud, misrepresentation!,] or unfair trade practices." Fanning, 322 S.C. at 404 n. 8, 472 S.E.2d at 245 n. 8.

. See S.C.Code Ann. §§ 56-15-10 to -600 (2006 & Supp.2014) (commonly referred to as the Dealers Act). Among other things, the Dealers Act prohibits "unfair or deceptive acts or practices.” Id. § 56-15~30(a) (2006). This includes "any action which is arbitrary, in bad faith, or unconscionable.” Id. § 56-15-40(1). Freeman points to the alleged violation of the Closing Fee Statute in the SCCPC to establish this “arbitrary” and "unconscionable” conduct. However, Hendrick Honda did not violate the Closing Fee Statute. There has thus been no arbitrary or unconscionable conduct upon which to base a claim for a violation of the Dealers Act.

. Because the closing fee is predetermined, it will, at best, only approximate actual closing costs.

. Hendrick Honda presented expert testimony that its average closing costs greatly exceeded the amount of the closing fee. The expert testified that, in 2006, when Freeman purchased her Honda, Hendrick Honda’s average closing costs were $507.96, well above the $299 closing fee. No one has ever suggested the impossible — that Hendrick Honda incurred zero closing costs. Yet that is what the jury found. I believe this glaring error is the result of the burden being effectively placed on Hendrick Honda, despite the boilerplate language in the jury charge that the plaintiff has the burden of proof.