20945

James R. YOUNG, Appellant, v. The INDEPENDENT PUBLISH-
ING COMPANY, a Subsidiary of Harte-Hanks Newspaper, Inc.,
Respondent.

(254 S. E. (2d) 681)

*J. Kendell Few,* Greenville, and *Harold R. Lowery,* Anderson, *for appellant.*

*G. Ross Anderson* and *Karl L. Kenyon,* Anderson, *for respondent.*

April 24, 1979.

RHODES, Justice:

Appellant commenced this action to recover damages for breach of an alleged employment contract under which he was to serve as editor-in-chief of two daily newspapers, The Anderson Independent and The Daily Mail. The lower court granted summary judgment on the ground that the alleged contract was unenforceable under the statute of frauds. We affirm.

On August 1, 1973, respondent, The Independent Publishing Company, appointed as its editor-in-chief appellant, James Young, who had been employed with respondent's papers for twenty-three years. He was terminated approximately six months later in March 1974.

The appointment of appellant as editor-in-chief was not evidenced by a formal written contract of employment between the parties. Instead, appellant relies on a series of writings which he asserts are incorporated one into the other by reference so as to form one memorandum fulfilling the legally required elements of an employment contract. These writings developed out of the following sequence of events.

On February 4, 1972, a contract was entered into between Wilton E. Hall (Hall) and Harte-Hanks Newspapers, Inc. (Harte-Hanks) whereby Harte-Hanks purchased from Hall all of the outstanding capital stock of The Independent Publishing Company, the publisher of the two daily newspapers above referenced. At the time the purchase was consummated, Hall sought to maintain local control of the editorial policy of the two newspapers and, in order to insure this right, the following paragraph (Paragraph 7) was inserted into the contract of sale:

To insure local control of editorial policy of "The Anderson Independent" and "The Daily Mail" for at least five years from the closing hereunder, B. D. Moyers shall serve as Vice President and Editor-in-Chief of the Company . . . for at least five years. . . . The Editor-in-Chief will have full authority to determine general editorial policy and general editorial content of the two newspapers. In the event Mr. Moyers shall cease his employment as Editor-in-Chief of the Company during said five year period, his successor shall be appointed by the Company with your [Hall's] approval in writing.

Moyers served as editor-in-chief from February 4, 1972 until April 24, 1973, at which time he was forced to resign. Following Moyers' resignation, appellant was nominated by Harte-Hanks for the position and, in compliance with the above stated provision, was subsequently approved by Hall in the following letter to Harte-Hanks dated June 29, 1973:

This will acknowledge and thank you for your telephone call on yesterday (June 27, 1973), stating that you are submitting, under the provisions of the peremptory contract between us (of February 4, 1972) Par. 7, the name of James R. Young, of Anderson, S. C., to become Editor-in-Chief of The Anderson Independent and Daily Mail. . . .

Our contract calls for written approval of your nomination. Without reservation I approve the nomination.

His appointment was confirmed by Harte-Hanks in its July 20 response to Hall's letter which solidified corporate plans "to designate him [Young] editor-in-chief effective August 1." Appellant's newly acquired position was subsequently announced to the public in the August 1, 1973 edition of the papers, excerpts of which denominate Young as "succeeding to the position held by Bill D. Moyers. . . ."

On the basis of the foregoing writings, appellant argues that he had a fixed term of employment from August 1, 1973 to February 4, 1977 under the theory that he succeeded to

the unexpired portion of the five year term of employment alleged to have been held by Young's predecessor, Moyers.

The elements required to satisfy the statute of frauds in order to have a valid employment contract are: (a) compensation; (b) determinable duration (an initial starting date and date of termination); (c) reciprocal rights, duties, and obligations; and (d) a written instrument if contract not to be performed within one year. *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N. Y. 48, 110 N. E. (2d) 551 (1953); *Stulsaft v. Mercer Tube & Mfg. Co.*, 288 N. Y. 255, 43 N. E. (2d) 31 (1942).

Since the alleged contract relied upon by appellant was not to be performed within a year, the primary question for decision is whether there was sufficient written memoranda of its terms subscribed by defendant to satisfy the statute of frauds, § 32-3-10, S. C. Code of Laws (1976). That section, in pertinent part, provides that:

No action shall be brought . . . [t]o charge any person upon any agreement that is not to be performed within the space of one year from the making thereof. Unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized.

The statute of frauds does not require that memoranda of the contract be contained in one document, but permits the essential contractual terms to be gathered from several writings which are connected either expressly or through internal evidence of the subject matter and occasion. *Barr v. Lyle,* 263 S. C. 426, 211 S. E. (2d) 232 (1975). As was stated in *Speed v. Speed,* 213 S. C. 401, 49 S. E. (2d) 588 (1948):

In such case[s], the connection of the writings may be implied where their contents show that they relate to the same parties and subject matter and are parts of one and the same

transaction. The writings, however, must contain internal evidence of their unity, relation or connection.
*Id.* 49 S. E. (2d) at 591.

However, where several writings are relied upon to constitute the requisite memorandum, they must, taken as a whole, set forth all the essential terms of the agreement so that the contract may be proved on the basis of such memorandum without resort to parol evidence. *Walker v. Preacher,* 188 S. C. 431, 199 S. E. 675 (1938) ; *Kennedy v. Grambling,* 33 S. C. 367, 11 S. E. 1081 (1890).

Even assuming the papers before us bear sufficient evidence of connection to permit their being considered as one, the resulting statement of the transaction is clearly incomplete. The evidence demonstrates that the parties agreed upon and fixed the compensation to be paid appellant at $25,000 per year. This was clearly an essential element of the bargain which could not be supplied by parol evidence and is nowhere evidenced in the writings. In no one of these written instruments does there appear a definite date of termination for appellant's employment; the only date mentioned in reference to appellant was his initial starting date of August 1, 1973. Nor in Young's testimony is it established that the respondent guaranteed him a job for a fixed determinable period of time. In response to the question of whether the respondent had promised him a job from August 1, 1973 to February 4, 1977, the appellant explained: "Mutually we . . . agreed that August 1 was the starting date for the fulfillment of the contract. . . I don't think he [respondent Harte-Hanks] even figured what the expiration date was. . . . I don't think it ever got into any February '77 or any particular date."

Appellant's primary contention is that there was a valid employment contract between respondent and Bill Moyers and that he, as Moyers' replacement, succeeded to all rights, privileges, and the unexpired employment term of Moyers. However, Moyers by his own testimony denies that he ever had a valid employment contract with respondent:

Q. Did you have an employment contract as such with the Independent or the Anderson Daily Mail Publishing Company, or Harte-Hanks?

. . . . .

A. I had a compensation contract. Is that what you mean?

Q. Did you have a separate employment contract, separate contract.

A. No.

. . . . .

Q. I don't believe there was anything in the contract mentioned as to salary or any other provision about place or residence, about the hours, about the time you should devote to the paper; is that correct?

A. There was no employment contract. There was a compensation contract and that contract did not mention any of these details.

Thus, it is evident from the above that the appellant claims rights under Moyers which Moyers disclaims ever having possessed.

Nor is the appellant to be aided in this regard by resort to the 1972 sales contract between Hall and Harte-Hanks. Paragraph 7 of this contract, as quoted above, appears to be no more than a formulation of editorial policy with its expressed purpose "to insure local control of editorial policy . . .for at least five years." To accomplish this purpose, the provision stipulated that Moyers' successor should be appointed with Hall's approval in writing. It is apparent that the correspondence between Hall and Harte-Hanks, so heavily relied upon by appellant, was no more than a mechanical compliance with the procedural directives outlined in Paragraph 7 which could in no way form a binding contractual agreement not otherwise contemplated by the parties.

It is axiomatic that a contract requires a meeting of the minds. *Shealy v. Fowler,* 182 S. C. 81, 188 S. E. 499 (1936). In the instant case there is no evidence

that the corporate respondent offered or assented to the contract contended for by the plaintiff.

For the foregoing reasons, we conclude that the lower court properly granted summary judgment.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.