23619

Kathy S. TAYLOR and Glenn L. Taylor, Respondents v. A.B. NIX, Nix V.W., Inc., Marine Midland Automotive Corporation d/b/a Porsche Financial Services, Porsche Cars North America, Inc., Sam Price, and Auto Recovery Bureau, Inc., of whom Nix V.W., Inc. and Porsche Cars North America, Inc. are Appellants. Appeal of NIX V.W., INC. and Porsche Cars North America, Inc.

(416 S.E. (2d) 619)

Supreme Court

*Robert W. Buffington,* of *Sinkler & Boyd, P.A.,* Columbia, for appellants.

*Walter B. Todd, Jr.* and *J. Derrick Jackson,* both of *Todd & Barber,* Columbia, for respondents.

Heard Dec. 4, 1991; Decided Apr. 6, 1992.

Reh. Den. May 6, 1992.

Toal, Justice:

The plaintiffs, Mr. and Ms. Taylor, brought this action on the theories of breach of warranty, strict liability in tort and a violation of the Regulation of Manufacturers, Distributors, and Dealers Act. Plaintiffs were awarded double actual damages and treble punitive damages against the defendant automobile dealer and manufacturer as provided in the Act. The defendants bring this appeal asserting: (1) the Act is unconstitutionally vague; (2) the actual damages doubled and trebled under the Act were not caused by the defendant's conduct in violation of the Act; (3) defendants' conduct did not support a finding of malice; (4) the trial judge erroneously allowed the plaintiffs to recover attorney fees which were related to the prosecution of common law claims and not the statutory action; (5) the notes written by the plaintiff and submitted to the dealer were hearsay and admitted erroneously; and (6) the evidence of the subsequent recall of the automobile were admitted in error.

## FACTS

The Taylors leased with an option to purchase a Porsche 928S from the defendants. The record shows the car had a multitude of defects discovered shortly after the Taylors took possession. The major complaints included a severe water leak in the hatchback, the presence of exhaust fumes in the passenger compartment and excessive heat radiating from the console between the two front seats where the gear shift was located.[1]

[1] There was also undisputed evidence that the sun roof leaked, alarm system malfunctioned, the speakers worked sporadically and one fell out of the door, and the rear wipers, interior lights and rear hatch release did not work.

Ms. Taylor testified she developed headaches which she attributed to the fumes. An analytical chemist testified the odor was a very sharp "throat-grabbing" type odor. Ms. Taylor also claimed the heat from the console was so intense her child received a blister on his finger when he touched it. Further, Ms. Taylor's leg would become reddened while she drove due to her leg's mere proximity to the console.

Ms. Taylor testified she repeatedly took the car in for repairs on these and a host of other malfunctions associated with the car. Each time she took the car in she included a handwritten note detailing the problems with the car. These notes, which were introduced as evidence, indicated she consistently brought the heat and fumes problem to the attention of the defendant's service department. It was uncontested that the car was taken to the dealer at least fourteen times in the twenty-six months the Taylors had possession of the car. From October 1986 to January 1987 Ms. Taylor took the car in three times, each time complaining of the heat and fumes. The repair odors do not reflect that any action was taken about the heat or fumes. Ms. Taylor testified their attitude was "that is the way the car is and live with it." She returned the car in May 1987 and requested insulation be placed in under the console. Mr. Taylor testified the insulation was stuffed in an unprofessional manner. This gesture failed to correct or improve the problem.

Ms. Taylor further testified that the service department personnel began ignoring her and that they continued with personal telephone conversations while she waited. She testified she was joked about, laughed at and avoided. Mr. Taylor testified he made several appointments with the Porsche representative that were cancelled at the last minute. When Ms. Taylor finally met with the representative, he took the car on a test drive with Ms. Taylor and drove the car 95 m.p.h. on I-26. When she told him about her son burning his finger, he flippantly told her to use the coin holder in the door instead of the ashtray for her coins. When Mr. Taylor attempted to reach this Porsche representative later, he was told the representative had left the company. The next representative assigned also cancelled appointments. When the Taylors did meet him, the service department could not find the Taylors' file. According to the Taylors, this representative listened to

their complaints and commented that "these Germans like to gas people." Both Porsche representatives promised to get back with the Taylors but failed to do so. Mr. Taylor testified that the first representative told him the reason Al Nix, the dealer, was not trying to fix the car was because Porsche was planning to take his franchise away.

Over objection, the Porsche service representative was questioned regarding the subsequent recall of the car. The recall was due to concerns over the overheating of the catalytic converter, which was located under the console.

The case was submitted to the jury on the theories of breach of warranty and strict liability. The jury was also requested to determine if the defendants had violated the Regulation of Manufacturers, Distributors, and Dealers Act and if the violation was with malice to determine punitive damages up to three times the actual damages. The jury also found the defendants maliciously violated the Act and returned a verdict of $16,100.00 in actual damages. The jury also awarded the maximum allowed punitive damages of three times the actual damages.

## DISCUSSION

### Constitutionality of the Statute

The Regulation of Manufacturers, Distributors, and Dealers Act provides it is a violation of this statute for any motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public. S.C. Code Ann. § 56-15-40(1) (1991). The respondents contend "arbitrary" is not defined within the Act and is unconstitutionally vague. We disagree.

Arbitrary conduct is readily definable and includes acts which are unreasonable, capricious or nonrational; not done according to reason or judgment; depending on will alone. *Black's Law Dictionary*. We hold this statutory provision adequately provides notice of what conduct is prohibited and is not unconstitutionally vague.

We note the lower court charged arbitrary meant "not governed by any fixed rules or standards." This definition was derived from *Deese v. South Carolina State Board of Dentistry*, 286 S.C. 182, 332 S.E. (2d) 539 (Ct. App.

1985). This definition applied in *Deese* is appropriate for reviewing the conduct of agencies; however, it is too narrow as applied to the conduct of motor vehicle dealers. Motor vehicle dealers are not required to deal with their customer guided solely by fixed rules and standards. Their conduct under this Act need not only have some reasonable basis. The erroneous charge is not before this Court as the defendants failed to object to the definition as charged. *Small v. Springs Industries, Inc.*, 300 S.C. 481, 388 S.E. (2d) 808 (1990). Furthermore, we find the defendants were not harmed by it as it is not conceivable under the facts of this case that the jury found the defendants acted merely maliciously arbitrary and not in bad faith.

### *Damages Under § 56-15-110*

Section 56-15-110(1) provides that any person who is injured by reason of anything forbidden in the Act may recover double the actual damages. Subsection (3) provides for punitive damages up to three times the actual damages if the defendant acted maliciously. S.C. Code Ann. § 56-15-110(3) (1991).

Frequently, as in the case at bar, several causes of action are joined which may be unrelated or may be alternative theories of recovery for the same conduct. Rule 18(1) SCRCP. However, only damages incurred as a result of the conduct in violation of this statute are recoverable and subject to doubling and punitive damages. S.C. Code Ann. § 56-15-110 (1991). The trial judge charged that the jury should assess actual damages under the breach of warranty or strict liability claim and then determine only if the defendant's conduct violated the statute. The jury was not charged or instructed to determine what damage arose from the defendant's conduct which constituted a violation of this statute. This charge was erroneous; however, the defendants were not prejudiced. Under the instant facts, any actual damages suffered by the plaintiffs clearly resulted from the defendant's acts which violated this statute.

### *Evidence of Malice*

The respondents argue there was insufficient evidence to support a finding of malice. We disagree. We find the jury could have properly found malice evidenced by any number of the facts recited above, *e.g.* 95 m.p.h. test

drive, ignoring, avoiding, joking about and laughing at the Taylors when they took the car in for service.

## Attorney Fees

The attorney for the Taylors testified the fees for the entire case were $23,813.50. He then deducted all fees which were related exclusively to the actions against the other defendants who settled prior to submitting the case to the jury. The remaining balance was $15,903.50 plus $2,563.10 in related costs. He submitted a detailed itemization of all the hours he spent on the case.

The defendant's attorney argued fees related to the non-statutory cause of action should have been excluded. We agree. However, precisely what fees were unrelated to the statutory action were not presented to the lower court. The defendants merely estimated $2,500 would be a reasonable sum for the prosecution of the claim under § 56-15-10, *et seq.* We hold this is not adequate. The breach of warranty and strict liability claims were related and intertwined with the statutory claim. The conduct of the breach of warranty was the same conduct which was deemed to be a violation of the statute. We hold when an action in which attorney fees are recoverable by statute is joined with alternative theories of recovery based on the same transaction, no allocation of attorney's services need to be made except to the extent counsel admits that a portion of the services was totally unrelated to the statutory claim or it is shown that the services related to issues which were clearly beyond the scope of the statutory claim proceeding. *Accord, Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. (2d) 266 (Fla. App. 1985). This approach requires the party asserting the right to attorney fees to produce an itemized affidavit of their fees that they believe are related to the statutory claim. The opposing party then has the burden of showing which of the fees are clearly unrelated.

## Admissibility of Notes Written by Ms. Taylor

The record shows notes itemizing the malfunctions of the car were prepared by Ms. Taylor immediately before she took the car in for service. These notes therefore qualify as a witness' past recollection and were properly admitted over hearsay objection. *Gwathmey v. Foor Hotel*

*Co.,* 121 S.C. 237, 113 S.E. 688 (1922) (citing *Bank v. Zorn,* 14 S.C. 444 (1881)); *see also Nelson v. Coleman Co.,* 249 S.C. 652, 155 S.E. (2d) 917 (1967).

## Recall Evidence

Subsequent remedial measures are generally not admissible to prove negligence. *Bolen v. Strange,* 192 S.C. 284, 6 S.E. (2d) 466 (1939). Other jurisdictions have faced the question of whether this rule has any application to acts in strict liability with no emerging consensus.[2] We find it unnecessary to address this broader issue in this case. Although subsequent repairs are inadmissible to show negligence, these measures may be admissible for other purposes. *2 Wigmore on Evidence,* § 283 (Chadbourn Rev. 1979). Specifically, subsequent alterations may be admissible to show the defective condition existed at the time alleged. *Eargle v. Sumter Lighting Co.,* 110 S.C. 560, 96 S.E. 909 (1918). We hold the subsequent recall was admissible for this purpose.

Affirmed.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.

---

[2] The majority of the federal circuits bar the admission of subsequent remedial measures in product liability actions under Rule 407 of the Federal Rules of Evidence. *See, Gauthier v. AMF, Inc.,* 788 F. (2d) 634 (9th Cir. 1986); *Flaminio v. Honda Motor Co., Ltd.,* 733 F. (2d) 463 (7th Cir. 1984); *Grenada Steel Industries, Inc. v. Alabama Oxygen Co.,* 695 F. (2d) 883 (5th Cir. 1983); *Josephs v. Harris Corp.,* 677 F. (2d) 985 (3rd Cir. 1982); *Cann v. Ford Motor Co.,* 658 F. (2d) 54 (2nd Cir. 1981), *cert. denied,* 456 U.S. 960, 102 S. Ct. 2036, 72 L. Ed. (2d) 484 (1982), *Roy v. Star Chopper Co.,* 584 F. (2d) 1124 (1st Cir. 1978), *cert. denied,* 440 U.S. 916, 99 S. Ct. 1234, 59 L. Ed. (2d) 466 (1979). *But see Farmer v. Paccar, Inc.,* 562 F. (2d) 518 (8th Cir. 1977); *Herndon v. Seven Bar Flying Service, Inc.,* 716 F. (2d) 1322 (10th Cir. 1983), *cert. denied,* 466 U.S. 958, 104 S. Ct. 2170, 80 L. Ed. (2d) 553 (1984). State courts are also divided. *See, Troja v. Black & Decker Mfg. Co.,* 62 Md. App. 101, 488 A. (2d) 516 (1985), *cert. denied,* 303 Md. 471, 494 A. (2d) 939 (1985) (inadmissible); *Ault v. International Harvester Co.,* 13 Cal. (3d) 113, 528 P. (2d) 1148, 117 Cal. Rptr. 812 (1975); *Millette v. Radosta,* 84 Ill. App. (3d) 5, 39 Ill. Dec. 232, 404 N.E. (2d) 823 (1980) (post accident recall admissible); *Carey v. General Motors Corp.,* 377 Mass. 736, 387 N.E. (2d) 583 (1979) (admissible); *Caprara v. Chrysler Corp.,* 52 N.Y. (2d) 114, 417 N.E. (2d) 545, 436 N.Y.S. (2d) 251 (1981); *Connelly v. Roper Corp.,* 590 A. (2d) 11, 404 Pa. Super. 67 (1991) (subsequent design charges inadmissible while repairs and recalls are admissible); *Shaffer v. Honeywell,* 249 N.W. (2d) 251 (S.D. 1976) (admissible); *Chart v. General Motors Corp.,* 80 Wis. (2d) 91, 258 N.W. (2d) 680 (1977) (admissible).