THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Darrell R. Johnson and Sheryll K. Johnson, Appellants,
v.
Fort Mill Chrysler Plymouth Dodge, Respondent.
 
 
 

Appeal From York County
 John C. Hayes, III, Circuit Court Judge

Unpublished Opinion No.  2005-UP-058
Heard December 7, 2004  Filed January 
 24, 2005

AFFIRMED IN PART, REVERSED IN PART 
 AND REMANDED

 
 
 
Mitchell K. Byrd, of Rock Hill, for Appellants
Michael E. Kozlarek, of Columbia, and Michael S. Malloy, of Charlotte, for Respondent.
 
 
 

PER CURIAM:  Darrell Johnson and his wife Sheryl (the Johnsons) appeal 
 the trial courts grant of directed verdict for Fort Mill Chrysler Plymouth 
 Dodge regarding claims for breach of contract and violations of both the Motor 
 Vehicle Dealers Act and the Unfair Trade Practices Act.  We affirm in part, 
 reverse in part, and remand.
FACTS
In March 2000, Darrell Johnson attempted to purchase a Chrysler PT Cruiser 
 automobile from Fort Mill Chrysler Plymouth Dodge (Fort Mill Chrysler).  The 
 dealership was taking deposits from customers for the vehicles, although the 
 vehicles had not yet arrived on its lot.  
Darrell spoke with Fort Mill Crysler salesman Isaac Byers, who told him he 
 could purchase a shale green PT Cruiser that had been originally ordered for 
 Morris, a customer who no longer wanted the vehicle. The Johnsons paid a $500 
 deposit to the dealership, indicating on the check it was for the Morris automobile.  
 Darrell received a New Car Order or Locate Sheet for a shale green PT Cruiser 
 and his name was written next to the Morris order on a vehicle display board 
 in the dealership showroom.  Byers informed Darrell no other documents could 
 be provided because the dealership would lose its allocation from Chrysler, 
 but assured him that the car would be available in June or July. [1] 
A few weeks later, Darrell returned to the dealership 
 and asked Byers if he could change the color of the car because Sheryl did not 
 like the shale green color and did not want the Morris vehicle.  Byers informed 
 Darrell he could have a taupe PT Cruiser originally ordered for a customer named 
 Darmer.  Byers removed Darrells name from beside Morris on the display board 
 and wrote it next to Darmer.  No documents were signed regarding the Darmer 
 vehicle, but Byers gave Darrell a Darmer vehicle specifications sheet and again 
 cited Fort Mill Chryslers limited allocation as the reason for not signing 
 any documents referencing the transaction.  
Darrell checked on the availability of his car periodically and each time Byers 
 told him the automobile was in production.  In late September when he checked 
 on whether the taupe PT Cruiser had arrived, Darrell was unable to speak with 
 Byers, who was out of work due to a car accident.  Instead, he spoke with a 
 new manager, Tim Parker, who told Darrell the dealership had no file showing 
 the Johnsons order.  The next day, Parker told Darrell the only taupe vehicle 
 had been sold to another customer.  Subsequently, the dealership found evidence 
 of the Johnsons deposit check and refunded the $500 to them on September 27, 
 2000.  The Johnsons later purchased another PT Cruiser from a different dealership. 

The Johnsons filed suit against the dealership for 
 breach of contract, violation of the Act to Regulate Manufacturers, Distributors, 
 and Dealers, and violation of the South Carolina Unfair Trade Practices Act.  
 In the complaint, the Johnsons allege breach of the contract to sell them the 
 Darmer vehicle.  The second and third causes of action incorporate by reference 
 the preceding allegations and claim causes of action under the Dealers Act and 
 the Unfair Trade Practices Act.  The case was tried before a jury and at the 
 end of the plaintiffs case, the trial court directed a verdict in favor of 
 the dealership as to all three causes of action.  The Johnsons appeal.
STANDARD OF REVIEW
When ruling on a directed verdict, the trial court must view the 
 evidence and the inferences reasonably drawn therefrom in the light most favorable 
 to the nonmoving party.  Sabb v. South Carolina State Univ., 350 S.C. 
 416, 427, 567 S.E.2d 231, 236 (2002).  If the evidence is susceptible to more 
 than one reasonable inference, the case should be submitted to the jury. Heyward 
 v. Christmas, 357 S.C. 202, 207, 593 S.E.2d 141, 144 (2004).
LAW/ANALYSIS
 I.                   
 Breach of Contract
The Johnsons assert the trial court erred in granting the dealerships motion 
 for directed verdict on the breach of contract claim.  We disagree.  
To succeed in a breach of contract claim, the Johnsons need to prove the Statute 
 of Frauds does not bar their action.  A contract for the sale of goods for $500 
 or more will not be enforced unless the parties have made a sufficient writing 
 signed by the party against whom enforcement is sought.  See S.C. Code 
 Ann. § 36-2-201(1) (2003).  A contract may be evidenced by one or more writings 
 that are connected either expressly or through internal evidence of the subject 
 matter and occasion.  Young v. Indep. Publg. Co., 273 S.C. 107, 110, 
 254 S.E.2d 681, 683 (1979) (citation omitted).  However, when several writings 
 must be considered, they must set forth all essential terms such that the contract 
 is proved without resort to parol evidence.  Id. at 111, 254 S.E.2d at 
 683 (citations omitted).   
To modify a contract within the Statute of Frauds, the modification must also 
 be in writing.  See S.C. Code Ann. § 36-2-209(3) (2003).   Part performance 
 by part payment may make the contract enforceable when the contract is divisible.  
 See South Carolina Reporters Comments, S.C. Code Ann. § 36-2-201 (2003).  
 When the subject matter of the contract is a single object, the contract would 
 not be enforceable without full payment.  Id.
Considering together 
 all the documents involved in the alleged transaction, no writing exists that 
 satisfies the Statute of Frauds.  If the Order and Locate Sheet and the deposited 
 $500 check form a contract, it is for the Morris vehicle, which the Johnsons 
 decided they did not want.  Darrells request to change the deal to one for 
 the Darmer vehicle fails to satisfy the Statute of Frauds requirement for written 
 modification.  The only writing referencing the Darmer vehicle is not signed 
 by an agent of the dealership.  In addition, no oral modification would be enforceable 
 based on part performance, because the Johnsons did not pay the full purchase 
 price for the automobile.  
Because only one reasonable inference can be drawn from the facts, the trial 
 court correctly granted the motion for directed verdict to the dealership regarding 
 the breach of contract claim. 
 II.                
 Dealers Act
The Johnsons also assert the trial court erred in granting a directed verdict 
 to the dealership on their claim for violation of the Act to Regulate Manufacturers, 
 Distributors, and Dealers.  We agree. [2]   
Damages can be recovered under the Dealers Act if an automobile dealer engages 
 in any action which is arbitrary, in bad faith, or unconscionable and which 
 causes damage to any of the parties or to the public.  S.C. Code Ann. §56-15-40(1) 
 (1991);  see also, deBondt v. Carlton Motorcars, Inc., 
 342 S.C. 254, 263, 536 S.E.2d 399, 404 (Ct. App. 2000).  Arbitrary acts include 
 those that are unreasonable, capricious or nonrational; not done according 
 to reason or judgment; depending on will alone.  Taylor v. Nix, 307 
 S.C. 551, 555, 416 S.E.2d 619, 621 (1992).   This does not require dealerships 
 to interact with customers solely by fixed rules and standards but does require 
 some reasonable basis for their conduct.  Id. at 556, 416 S.E.2d at 
 621.  Bad faith is [t]he opposite of good faith, generally implying or involving 
 actual or constructive fraud, or a design to deceive or mislead another, or 
 a neglect or refusal to [fulfill] some duty or some contractual obligation, 
 not prompted by an honest mistake as to ones rights or duties, but by some 
 interested or sinister motive. deBondt, 342 S.C. at 263, 536 S.E.2d 
 at 404 (citations omitted). Generally, unconscionable as it relates to an act 
 or transaction means showing no regard for conscience; affronting the sense 
 of justice, decency, or reasonableness.  Blacks Law Dictionary (8th 
 ed. 2004). Unconscionability has been found in a situation lacking meaningful 
 choice due to one-sided contract terms.  Fanning v. Fritzs Pontiac-Cadillac-Buick, 
 Inc., 322 S.C. 399, 403, 472 S.E.2d 242, 245 (1996).
Viewed in a light most favorable to the Johnsons, the facts raise more than 
 one reasonable inference creating a jury question and rendering a directed verdict 
 improper.  Byers recalled a practice of returning deposit checks to customers 
 after selling the vehicles associated with those deposits to other customers. 
 Fort Mill Chrysler accepted deposits for vehicles for which it knew it did not 
 have a definite inventory.  According to Darrells testimony, the dealership 
 indicated to him that a specific vehicle was being identified for his purchase 
 both by changing the name on a specification sheet and on a display board.  
 The dealership later claimed to have no record of a transaction with the Johnsons 
 and Parker informed Darell that the dealership sold the only taupe vehicle.  
 In addition, after accepting the Johnsons $500 deposit, Fort Mill Chrysler 
 held the check for six months before returning it to them.  Byers testimony 
 indicates that the dealership had a practice of accepting deposits for vehicles 
 not in stock with full knowledge that there would not be enough PT Cruisers 
 to satisfy the orders they procured.  At the very least, a question of fact 
 exists as to whether the dealership acted arbitrarily, in bad faith, or unconscionably.  
 Therefore, the trial court erred in granting the dealerships motion for directed 
 verdict on the Dealers Act cause of action.
 III.             
 South Carolina Unfair Trade Practices Act
The Johnsons also argue the trial court erred in granting the dealerships motion 
 for directed verdict involving their claim for a violation of the Unfair Trade 
 Practices Act.  We agree.  
To recover under this Act, the plaintiff must prove an ascertainable loss 
 of money or property because of an unfair or deceptive method, act, or practice.  
 S.C. Code Ann. §§ 39-5-20, 39-5-140 (1985).  The plaintiff must also show the 
 actions of the defendant adversely affect the public interest, which can be 
 shown by proving the potential for repetition.  Daisy Outdoor Adver. Co., 
 Inc. v. Abbott, 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996).  
Darrells testimony regarding paying a higher price for the PT Cruiser he purchased 
 from another dealership could lead a jury to infer that Fort Mill Chryslers 
 actions caused the Johnsons an ascertainable financial loss referenced by the 
 Act.  Darrell testified that he paid $23,000 for a PT Cruiser, $3,900 more than 
 the price he claims Fort Mill Chrysler quoted to him.  There was sufficient 
 evidence from which a jury could have found that the dealership accepted deposits 
 for vehicles not in stock and delayed the return of the deposits even after 
 it became clear that the stock would not meet the demands of those who had given 
 deposits.  A jury could have found the Johnsons were under the impression that 
 their deposit reserved them a specific PT Cruiser. The dealership promising 
 more cars than inventory would ever permit seems to have been the common practiceclearly 
 repeated and potentially repeatable. Again viewed in a light most favorable 
 to the Johnsons, sufficient evidence exists that indicates the dealership may 
 have engaged in practices that were unfair or deceptive based on its dealings 
 with them.  Therefore, the trial court erred in granting a directed verdict 
 as to the Unfair Trade Practices Act claim.
The trial court 
 was correct to grant a directed verdict to the dealership on the breach of contract 
 claim.  However, questions of fact were created as to the alleged violations 
 of both the Dealers Act and the Unfair Trade Practices Act, and those questions 
 should have been submitted to the jury.  
 AFFIRMED IN PART, REVERSED IN PART and REMANDED.
ANDERSON, STILWELL, and SHORT, JJ., concur.

 
 [1] Due to a successful marketing campaign, Chrysler 
 experienced high demand from customers prior to the arrival of the new PT 
 Cruiser on dealership lots; therefore, dealerships were allotted only a limited 
 number of the vehicles.  

 
 [2] The dealership suggests the causes of action under the Dealers 
 Act and the Unfair Trade Practices Act must fail because they are derived 
 from the breach of contract claim.  Neither the Dealers Act nor the Unfair 
 Trade Practices Act contemplates a Statute of Frauds requirement.  See 
 S.C. Code Ann § 56-15-10 et seq. (1991), S.C. Code Ann. § 39-5-10 
 et seq. (1985).  Thus, the second and third causes of action 
 do not fail for this reason.