THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Marion L.
 Eadon, Jr., Respondent,
 
 
 

v.

 
 
 
 Danny White, Appellant.
 
 
 

Appeal From Clarendon County
Special Referee G. Wells Dickson, Jr. 
Unpublished Opinion No. 2008-UP-043
Heard January 9, 2008  Filed January 11,
 2008
AFFIRMED

 
 
 
 Scott L. Robinson, of Manning, for Appellant.
 Frances Ricci Land Welch, of Manning, for Respondent.
 
 
 

PER CURIAM:  Danny
 White appeals the special referees report denying his motion for a jury trial. 
 We affirm.  
FACTS
Marion Eadon, Jr., employed White as a
 mechanic at his automotive dealership located in Manning, South Carolina.  While
 White was employed by Eadon, White attempted to obtain financing from the National
 Bank of South Carolina (the Bank) to purchase a mobile home, but was unsuccessful. 
 Consequently, White asked Eadon if he would be willing to generate a loan in his
 name so White could purchase and finance a mobile home.   
On January 10, 2000, Eadon endorsed a note in the amount of
 $49,536.00, the purchase price of the mobile home White selected.  White
 then used the funds Eadon obtained from the Bank to purchase a mobile home.  The
 security agreement accompanying the note provided a 2000 Fleetwood Heritage
 Pointe Mobile Home, the one White obtained, as security for repayment of the
 debt.  The Bank set up a third party pledge/hypothecation agreement allowing
 Eadon to borrow money on collateral in Whites name.[1]  The third party pledge signed
 by White lists the mobile home as the collateral securing Eadons debt under
 the executed note and security agreement.  The loan was amortized for ten years
 with a five year balloon.  The Bank held the title to the mobile home.
Subsequently, White took possession
 of the mobile home and initially made scheduled payments directly to the Bank. 
 However, when White and Eadons employment relationship ended so did the
 payments.  Gary Dennis, a loan officer for the Bank, testified the payment
 history was very poor and White was aware payments were past due.  When White
 failed to make payments, the Bank drafted the payments directly from Eadons
 account with the Bank.  Eadon testified he paid in excess of $5,000.00 in late
 payments.  The balloon payment became due on January 15, 2005.  According to
 Eadon, the Bank required the loan to be paid in full since previous attempts were
 unsuccessful to bring the loan current under the terms of the contract.    Because
 the Bank refused to renew the note, Eadon paid the remaining balance due,
 $32,821.38, and the Bank reassigned the note and title to the mobile home to him. 
 
White does not dispute he was supposed to make the payments on the
 note.  Rather, White contends the loan was for a ten-year period, and the Bank,
 not Eadon, was to hold the collateral.  According to Whites testimony, Eadon
 is wrongfully holding the title to the mobile home because the note was fully
 paid.  White also contends he intended to continue making monthly payments, but
 is unable to do so because Eadon paid the balance due on the note. 
At the
 time of the hearing, White remained in possession of the mobile home.  Prior to
 the hearing, White made a motion for a jury trial.  Following Eadons case-in-chief
 and the close of all testimony, White renewed his motion for a jury trial and
 moved for a directed verdict on all of Eadons causes of actions.  Subsequently,
 the special referee issued a report (1) denying Whites motion for a jury
 trial; (2) finding the loan documents as a whole satisfied the statute of
 frauds; (3) finding  Eadon was entitled to the collection rights set forth in
 the loan documents; (4) entering a judgment, on behalf of Eadon, against White;
 and (5) entitling Eadon to enforce the judgment and take possession of the
 mobile home.  This appeal followed.  
STANDARD OF REVIEW
On
 appeal from the final judgment of a master or special referee, this court has
 the same scope of review as if the appeal is from the circuit court without a
 jury.  See Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229,
 237, 391 S.E.2d 538, 543 (1990) (Our scope of review for a case heard by
 a Master-in-Equity who enters a final judgment is the same as that for review
 of a case heard by a circuit court without a jury.).  Under this scope, the
 appellate court has jurisdiction to find facts in accordance with its views of
 the preponderance of the evidence.  Grosshuesch v. Cramer, 367 S.C. 1,
 4, 623 S.E2d 833, 834 (2005).  Thus, we may find facts and may reverse the masters
 factual findings if they are against the greater weight of the evidence.  Campbell v. Carr, 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct. App. 2004). 
 Pursuant to Rule 220(b), SCACR, when an appellate court chooses to find facts
 in accordance with its own view of the evidence, the court must state
 distinctly its findings of fact and the reason for its decision.  Dearybury
 v. Dearybury, 351 S.C. 382, 388, 544 S.E2d 620, 623 (2001).  
This broad scope of
 review does not require the appellate court to disregard the findings of the
 lower court.  Robinson v. Tyson, 319 S.C. 360, 362-63, 461 S.E.2d 397,
 399 (Ct. App. 1995).  Nor are we required to ignore the fact the special
 referee, who saw and heard the witnesses, is in a better position to evaluate
 their credibility.  Ingram v. Kaseys Assocs., 340 S.C. 98, 105, 531
 S.E.2d 287, 291 (2000).  Furthermore, the appellant is not relieved of the
 burden of convincing this court the special referee committed legal error in
 its findings.  Pinckney v. Warren, 344 S.C. 382, 388, 544 S.E.2d 620,
 623 (2001).
LAW/ANALYSIS
I.  Motion for a Jury
 Trial
White argues the special
 referee erred in denying his motion for a jury trial.  We disagree.  
At the start of the
 hearing White requested a jury trial.  However, White and Eadon agreed to allow
 the special referee to hear testimony, and if the elements of Whites
 counterclaims giving rise to a jury trial could not be established, they agreed
 the special referee would issue his determination.  Conversely, if the evidence
 presented established viable causes of action, the case would go to a jury. 
 After hearing testimony of both parties, the special referee found, based on
 the facts presented, Whites counterclaims for conversion and slander of title were
 not viable. 
A.  Conversion
Conversion is a wrongful act emanating from either a
 wrongful taking or wrongful detention.  Moore v. Weinberg, 373
 S.C. 209, 227, 644 S.E.2d 740, 749 (Ct. App. 2007); Kirby v. Horne
 Motor Co., 295 S.C. 7, 366 S.E.2d 259 (Ct. App. 1988). Conversion is defined as the unauthorized
 assumption and exercise of the rights of ownership over goods or personal
 chattels belonging to another, to the alteration of their condition or to the
 exclusion of the rights of the owner.  Mullis
 v. Trident Emergency Physicians, 351 S.C. 503, 507, 570 S.E.2d 549, 550-51 (Ct.
 App. 2002); Green v. Waidner, 284 S.C. 35, 37, 324 S.E.2d 331, 333 (Ct. App.
 1984); see Owens v. Andrews Bank & Trust Co., 265 S.C. 490,
 496, 220 S.E.2d 116, 119 (1975) (finding conversion may arise by the illegal
 detention of anothers property).  
Conversion
 may arise by some illegal use or misuse, or by illegal detention of anothers
 personal property. Moore, 373 S.C. 209, 227, 644 S.E.2d at 749; Regions
 Bank v. Schmauch, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct. App. 2003); Castell
 v. Stephenson Fin. Co., 244 S.C. 45, 50-51, 135 S.E.2d 311, 313 (1964).  In
 order to prevail in a conversion action, the plaintiff must prove either title
 or right to possession of the property at the time of the conversion. Oxford
 Fin. Co. v. Burgess,  303 S.C. 534, 539, 402 S.E.2d 480, 482 (1991).
In
 the case sub judice, White has had and continues to have actual
 possession of the mobile home.  Eadon did not exercise any unauthorized or
 wrongful ownership over the mobile home as he never had actual possession of
 the mobile home.  Instead, Eadon possesses the title of the mobile home that
 the Bank assigned to him after the debt was paid.  Further, White understood he
 would not have possession of the title until payments relating to his agreement
 with Eadon were made in full.  Accordingly, White failed to establish the
 necessary elements of conversion and does not have the right to hold the title
 to the mobile home.  
B.  Slander of Title
The
 term slander of title is defined as a false and malicious statement, oral or
 written, made in disparagement of a persons title to real or personal
 property, causing him injury.  Pond Place Partners, Inc. v. Poole, 351 S.C. 1, 18-19, 567 S.E.2d 881, 890 (Ct. App. 2002); 50 Am.Jur.2d  Libel
 & Slander § 548 (1995). Generally, an action under slander of title may
 only be maintained by one who possesses an estate or interest in the affected
 property.  Id.; see generally Jeffrey F. Ghent, Slander
 of Title: Sufficiency of Plaintiffs Interest in Real Property to Maintain
 Action, 86 A.L.R.4th 738 (1991). The tort of slander
 of title is almost identical to the tort of product disparagement, the only
 difference being the former tort involves aspersing the quality of ones title
 to property and the latter tort involves aspersing the quality of ones
 property.  Poole, 351 S.C. at 18-19, 567 S.E.2d at 890.  Slander of
 title is grounded in the tort of injurious falsehood, and the terms are often
 used interchangeably.  Id.  
An
 action for slander of title should not be confused with personal defamation.  Id.  The two differ in at least three ways.  Id.  First, in slander of title
 causes of action, proof of a special harm is required in all cases; second, there
 must be proof of a greater amount of fault than negligence regarding the
 falsity of the statement; and, third, disparagement of property may, in a
 proper case, be enjoined.  Id.  To establish slander of title, one must
 show: (1) the publication of (2) a false statement (3) derogatory to
 plaintiff's title (4) with malice (5) causing special damages (6) as a result
 of diminished value in the eyes of third parties.  Huff v. Jennings, 319 S.C. 142, 146, 459 S.E.2d 886, 889 (Ct. App. 1995).
Here, White failed
 to establish the necessary elements of slander of title.  White admitted an
 agreement existed with Eadon to enable White to purchase a mobile home.  Specifically,
 White admitted Eadon would obtain financing for the purchase of the mobile home
 and White would make the payments.  However, White failed to make the
 payments.  As a result, Eadon paid off the loan and was assigned the title of
 the mobile home.  Accordingly, Whites own admission negates any false
 statement; thus, the cause of action for slander of title is without merit. 
 
II.  Statute of Frauds
White contends the special referee erred in finding
 the loan documents as a whole satisfied the statute of frauds.  We disagree.
Any agreement not
 to be performed within one year from the making must be in writing and signed
 by the party against whom enforcement is sought.  S.C. Code Ann. § 32-3-10(5)
 (Supp. 2007).  It is well settled that the form of writing required by the
 statute is not material.  Speed v. Speed, 213 S.C. 401, 404, 49 S.E.2d
 588, 591 (1948).  Indeed, the statute of frauds does not require that
 memoranda of the contract be contained in one document, but permits the
 essential contractual terms to be gathered from several writings which are
 connected either expressly or through internal evidence of the subject matter
 and occasion.  Young v. Indep. Pub. Co.,  273 S.C. 107, 110-111,
 254 S.E.2d 681, 683 (1979); Barr v. Lyle, 263 S.C. 426, 211 S.E.2d
 232 (1975). As stated in Speed:

 In such
 case(s), the connection of the writings may be implied where their contents
 show that they relate to the same parties and subject matter and are parts of
 one and the same transaction.  The
 writings, however, must contain internal evidence of their unity, relation or
 connection.

213
 S.C. at 404, 49 S.E.2d at 391.
However,
 where several writings are relied upon to constitute the requisite memorandum,
 they must, taken as a whole, set forth all the essential terms of the agreement
 so the contract may be proved on the basis of such memorandum without resort to
 parol evidence.  Young, 273 S.C. at 110-111, 254 S.E.2d at 683; Walker v. Preacher, 188 S.C. 431, 433, 199 S.E. 675, 677 (1938); Kennedy
 v. Grambling, 33 S.C. 367, 369, 11 S.E. 1081, 1083 (1890).
In the case sub judice, the note, security agreement, and third party pledge agreement,
 when taken as a whole, set forth the essential terms of the agreement between
 Eadon and White.  Further, the third party pledge agreement signed by White
 indicates the mobile home as collateral for Eadons debt.  
Additionally,
 we find White is judicially estopped from denying the existence of his
 agreement with Eadon.  Judicial estoppel precludes a party from adopting a
 position in conflict with one earlier taken in the same litigation. Commerce
 Ctr. of Greenville, Inc. v. W. Powers McElveen & Assoc., Inc., 347 S.C.
 545, 554, 556 S.E.2d 718, 723 (Ct. App. 2001).  The doctrines function is
 to protect the integrity of the judicial process or the integrity of the courts
 rather than to protect litigants from allegedly improper or deceitful conduct
 by their adversaries.  Id.  The doctrine generally applies only to
 inconsistent statements of fact.  Id.; Hayne Fed. Credit Union v.
 Bailey, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997) (adopting the
 doctrine of judicial estoppel as it relates to matters of fact in South Carolina); Quinn v. The Sharon Corp., 343 S.C. 411, 416, 540 S.E.2d 474, 476
 (Ct. App. 2000) (Anderson, J., concurring) (A court must be able to rely on the
 statements made by the parties because truth is the bedrock of justice.
 Therefore, a litigant cannot blow both hot and cold. Under the doctrine of judicial estoppel, a
 party that has assumed a particular position in a judicial proceeding, via its pleadings, statements, or
 contentions made under oath, is prohibited from adopting an inconsistent
 posture in subsequent proceedings.) (citations omitted).
At
 the hearing before the special referee, White admitted an agreement existed
 with Eadon to assist White in  obtaining financing for Whites purchase of a
 mobile home.  Furthermore, White admitted he was responsible for making the
 loan payments.  As a result, White is precluded from adopting a position in
 conflict with one earlier taken.
III.  Doctrine of Merger of Title
White
 next argues the special referee erred in finding the doctrine of merger of
 title inapplicable in the present case.  Specifically, White contends the
 special referee erred in finding the note and security agreement were assigned
 to Eadon.  We disagree.
Ordinarily, when equitable and legal titles unite in the same person,
 merger occurs and the equitable encumbrance ceases to exist.  First Fed.
 Sav. and Loan Assn of South Carolina v. Finn,  300 S.C. 228, 231, 387
 S.E.2d 253, 254 (1989); Thompson v. Hudgens, 161 S.C. 450, 452, 159
 S.E. 807, 810 (1931). The burden rests on the party opposing merger to prove a
 contrary intention existing at the time the two interests came together. First
 Fed., 300 S.C. at 231, 387 S.E.2d at 254.  An intention to prevent merger
 may be implied from facts indicating merger would be opposed to the interest of
 the person in whom the legal and equitable interests became united and that
 such an intention existed at the time of the merger. Id. at 231, 387
 S.E.2d at 254; McCreary v. Coggeshall, 74 S.C. 42, 53 S.E. 978 (1906). 
 
While White is
 correct in his assertion Eadon extinguished the debt with the Bank, this does not
 eliminate the existence of Whites agreement to make the payments of the loan. 
 Under the agreement between Eadon and White, White was the debtor.  Therefore,
 it can be implied at the time the two interests came together Eadon opposed
 merger.  Accordingly, the special referee did not err in finding the doctrine
 of merger inapplicable. 
Furthermore,
 merger is not favored either in the courts of law or of equity.  Lipscomb v.
 Goode, 57 S.C. 182, 187, 35 S.E. 493, 495 (1900). The South Carolina
 Supreme Court stated in Lipscomb:

 Notwithstanding
 the technical rule of law, equity will prevent or permit a merger as will best
 subserve the purposes of justice, and the actual and just intention of the
 parties; and, in the absence of an expression of intention, if the interest of
 the person in whom the several estates have united, as shown from all the circumstances,
 would be best subserved by keeping them separate, the intent will ordinarily be
 implied. A merger will be prevented by equity only, however, for the purpose of
 promoting substantial justice. It will not prevent a merger where such
 prevention would result in carrying a fraud or other wrong into effect.

Id.  Here, to apply the doctrine of merger would promote
 injustice.  It is clear from the record the intention and understanding was
 White would acquire a mobile home through Eadons loan and White agreed to make
 the payments in full.  Additionally, Eadon remained secure in his loan because the
 mobile home was pledged as collateral.  
IV.  Directed Verdict
 and Counterclaims
White also argues his case should be reversed on
 appeal because the special referee failed to rule on his counterclaims or on
 his motion for a directed verdict.  This issue is not preserved for review. 

On
 appeal, White acknowledges the special referee never made a final ruling on his
 motion for a directed verdict or any relief requested in his counterclaims.  An
 issue cannot be raised for the first time on appeal.  In re Michael H., 360 S.C. 540, 546, 602 S.E.2d 729,
 732 (2004).  In order for an issue to be preserved for appellate
 review it must be raised and ruled upon by the trial court.  Staubes v. City
 of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000); Jones v.
 Daley, 363 S.C. 310, 315, 609 S.E.2d 597, 599 (Ct. App. 2005).  Error
 preservation requirements are intended to enable the lower court to rule
 properly after it has considered all relevant facts, law, and arguments.   Id. (quoting IOn v. Town of Mt. Pleasant, 338 S.C. 406, 422, 526 S.E.2d 716,
 724 (2000)).  If the trial court does not rule on an issue, the reviewing
 court simply would not be able to evaluate whether the trial court has
 committed error. Id. Furthermore, Whites counsel failed to make a
 motion pursuant to Rule 59(e), SCRCP, to alter or amend the special referees
 order to obtain a final ruling on his motion for a directed verdict and counterclaims. 
 Accordingly, this issue is not preserved for our review.  
CONCLUSION
Based
 on the foregoing, the decision of the special referee is 
AFFIRMED.
ANDERSON,
 SHORT AND WILLIAMS, JJ., CONCUR.

[1] A hypothecation or third party pledge agreement pledges the collateral of another
 but does not require any payment by the particular person.