# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Latoya Brown, Petitioner,

v.

Dick Smith Nissan, Inc. and Old Republic Surety Company, Respondents.

Appellate Case No. 2013-000417

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

---

Opinion No. 27556
Heard February 3, 2015 – Filed August 5, 2015

---

## REVERSED

---

William T. Toal, of Johnson, Toal & Battiste, P.A., of Columbia, for Petitioner.

Joseph Gregory Studemeyer, of Columbia, for Respondents.

---

**JUSTICE BEATTY:** Latoya Brown entered a contract to purchase a Mazda 6 automobile from Dick Smith Nissan, Inc. ("Dick Smith") with the

assistance of salesman Robert Hiller.  The purchase was contingent on acquiring third-party financing.  Due to continuing and unresolved issues with financing, Brown returned the vehicle to Dick Smith.  The car was later repossessed and sold by Sovereign Bank with a deficiency against Brown.  Brown filed a complaint against Dick Smith and Old Republic Surety Company ("Old Republic"), the surety on Dick Smith's licensing bond, alleging violations of the South Carolina Dealers Act[1] ("Dealers Act").  The trial judge, in a bench trial, found in favor of Brown and awarded damages plus interest as well as attorney's fees and costs.  Dick Smith and Old Republic appealed and the Court of Appeals reversed, concluding that any misconceptions that Brown had about her financing were caused by Sovereign Bank, not Dick Smith.  *Brown v. Dick Smith Nissan, Inc.*, Op. No. 2012-UP-688 (S.C. Ct. App. filed Dec. 28, 2012).  We granted Brown's petition for a writ of certiorari to review the decision of the Court of Appeals and now reverse.

## I.      Factual / Procedural History

Shortly after graduating from college, Brown went to Dick Smith to buy a car and was assisted by Hiller.  She informed him that she wanted to pay no more than $250 per month for a car payment.  Hiller showed Brown pictures of pre-owned cars on his computer.  Brown selected a Mazda 6 and Hiller prepared a buyer's order for the Mazda 6.  He then directed Brown to the finance department.  Brown talked to Kent Guthrie in the finance department and signed an installment contract, which identified the Mazda 6, the payment amount, the total number of payments, and when the first monthly payment would be due.  The contract also included a clause that the contract was contingent on financing by a third-party source.  After providing proof of insurance, Brown took possession of the Mazda 6.

Initially, Dick Smith told Brown that BB&T would finance her purchase.  Brown, however, received a denial letter from BB&T.  Brown then contacted Hiller to inquire about financing.  Hiller told Brown that Dick Smith would continue to seek financing for the Mazda 6.  Thereafter, Brown received denial letters from multiple financial institutions, including Nissan Motor Acceptance Corporation.  As a result, Brown called Hiller again concerning her financing.

---

[1] The South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (the "Dealers Act") is codified at S.C. Code Ann. §§ 56-15-10 to -600 (2006 & Supp. 2014).

Hiller reassured her that he was still working on securing financing for her. Brown told Hiller that if he could not get her financed, she would return the Mazda 6.

Sovereign Bank was one of the many financial institutions originally solicited by Kent Guthrie. Because his initial attempts were not successful, Guthrie again contacted Sovereign Bank. In negotiating with Sovereign Bank, Guthrie misrepresented that Brown was the relative of a long-time Dick Smith employee and that Guthrie needed a favor on the deal. Sovereign Bank approved financing for a Nissan Altima as requested by Guthrie.[2] However, Sovereign Bank requested proof of income of $2,800 per month. At the time, Brown's monthly income was approximately $1,800.

Hiller called Brown and told her that Sovereign Bank had approved her financing. After Hiller told Brown that she was approved by Sovereign Bank, Brown received a denial letter from Sovereign Bank. Brown went back to Dick Smith and spoke with Hiller. She showed him her denial letter and he responded that Sovereign Bank had approved her application and would finance the car. Brown requested proof of financing. Hiller then went to Guthrie and returned with a form entitled "Sovereign Bank Application Status." The document indicated that: (1) Brown's financing was approved for a Nissan Altima, (2) Brown was Hiller's relative, and (3) proof of income of $2,800 per month was required in order to finance the purchase.

Brown called Sovereign Bank to verify the status of her financing request. A representative from the bank informed her that financing was approved for a Nissan Altima. Brown then advised the bank that she was buying a Mazda 6, not a Nissan Altima, and asked to change the paperwork to reflect the correct car. Sovereign Bank refused to do so and told her to contact Dick Smith. Brown contacted Dick Smith and it inexplicably refused to take any corrective action. Unbeknownst to Brown, Dick Smith had accepted payment from Sovereign Bank for the Nissan Altima.

The day after Brown received the denial letter from Sovereign Bank, she returned the Mazda 6 and its keys to the Dick Smith dealership. She indicated that she returned the Mazda 6 because she did not believe it was financed. Shortly

---

[2] The different application numbers on Brown's denial letter and approval letter demonstrates that Brown was initially denied financing by Sovereign Bank. The second application indicated that the loan was for a Nissan Altima.

thereafter, Sovereign Bank sent Brown a letter informing her that it had repossessed the Mazda 6 and sold it, resulting in a deficiency of $3,843 for which Brown was responsible. Brown filed suit against Dick Smith and Dick Smith's licensing bond issued by Old Republic, alleging violations of section 56-15-30(a) of the Dealers Act.[3]

## II.    Standard of Review

An action brought under the Dealers Act is an action at law. *See Adams v. Grant*, 292 S.C. 581, 582, 358 S.E.2d 142, 143 (Ct. App. 1986) (recognizing that an action under the Dealers Act is an action at law). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec-Fab, Inc.*, 381 S.C. 597, 599-600, 675 S.E.2d 414, 415 (2009). "The Court will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Id.*

## III.    Discussion

### A.

The Dealers Act prohibits a motor vehicle dealer from, *inter alia*, engaging in "any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public." S.C. Code Ann. § 56-15-40(1) (2006). "Arbitrary conduct is readily definable and includes acts which are unreasonable, capricious or nonrational; not done according to reason or judgment; depending on will alone." *Taylor v. Nix*, 307 S.C. 551, 555, 416 S.E.2d 619, 621 (1992). Bad faith is "[t]he opposite of good faith, generally implying or involving actual or constructive fraud, or a design to deceive or mislead another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *State v. Griffin*, 100 S.C. 331, 331, 84 S.E. 876, 877 (1915) (citation omitted). "Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no

---

[3] Section 56-15-30(a) states, "Unfair methods of competition and unfair or deceptive acts or practices as defined in § 56-15-40 are hereby declared to be unlawful." S.C. Code Ann. § 56-15-30(a) (2006).

fair and honest person would accept them." *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 322 S.C. 399, 403, 472 S.E.2d 242, 245 (1996).

## B.

For several reasons, Brown contends the Court of Appeals erred in reversing the decision of the trial judge. First, Brown argues the Court of Appeals erred in finding the inaccuracies[4] on the financing application were "puffing"[5] and that those inaccuracies did not amount to bad faith, fraud, or a deceptive act. She states the inaccuracies were false statements, which constituted a clear violation of both federal and state law.[6] Second, Brown alleges the Court of Appeals failed to identify that Dick Smith received funding for a Nissan Altima, not a Mazda 6. Because the financing of the Mazda 6 was a condition precedent for the installment contract she signed, Brown submits that she was never obligated to make monthly payments on the car and was entitled to return it.

In response, Dick Smith claims that Brown abandoned the Mazda 6 against its advice. Dick Smith also maintains that Brown was not harmed by any of its actions. However, even if she was harmed, it was because of Sovereign Bank's "erroneous letter" and not any statements from Dick Smith.

---

[4] Brown was falsely listed as a family member, the collateral was incorrect, and Brown made less than the required monthly income.

[5] "Puffing" is defined as:

> The expression of an exaggerated opinion — as opposed to a factual misrepresentation — with the intent to sell a good or service. Puffing involves expressing opinions, not asserting something as a fact. Although there is some leeway in puffing goods, a seller may not misrepresent them or say they have attributes that they do not possess.

*Black's Law Dictionary* 1353 (9th ed. 2009).

[6] *See* 18 U.S.C. § 1005 (2002) (proscribing thirty years' imprisonment for anyone who intends to defraud any bank and receives money); S.C. Code Ann. § 16-13-10 (2003) (providing that it is unlawful for a person to publish as true any false writing or instrument of writing).

The factual findings of the trial judge, which are supported by the record, demonstrate that Sovereign Bank received a credit application to finance a Nissan Altima and approved financing for a Nissan Altima. The record does not reflect an error on the part of Sovereign Bank. In contrast, Dick Smith made false statements to Sovereign Bank and Brown regarding the financing for the Mazda 6. Dick Smith also made no effort to correct the problem after receiving the credit application approval that listed the Nissan Altima instead of the Mazda 6. In fact, even after Brown advised Dick Smith that Sovereign Bank refused to substitute the Mazda 6 for the Nissan Altima, Dick Smith took no corrective action. As a result, Brown was erroneously required to pay Sovereign Bank for a car that she did not agree to buy and did not possess.

The subsequent repossession of the Mazda 6 and deficiency against Brown were the result of Dick Smith's failure to timely take corrective action to ensure that the Mazda 6 (versus the Nissan Altima) was financed by Sovereign Bank. Even assuming that Sovereign Bank would agree to substitute collateral in this case, there is no evidence that there was ever an attempt by Dick Smith to substitute collateral prior to Brown returning the vehicle. The likely conclusion is that the collateral was not substituted until the Mazda 6 was repossessed months after Brown returned it to Dick Smith.

Further, we disagree with the Court of Appeals that the inaccuracies in the information provided to Sovereign Bank was merely "puffing" used to assist Brown in getting financing and that the inaccuracies did not cause her damage. Inaccuracies in a financing application are a serious cause for concern. Financing a car that Brown did not purchase was neither "puffing" nor helpful to Brown. The fact that Brown was required to pay for a car that she did not possess was actually damaging as is shown by Sovereign Bank's collection efforts. Moreover, Dick Smith's refusal to timely assist in transferring the collateral resulted in Brown being expected to pay for a car for which she would not be able to obtain title.

Additionally, we reject Dick Smith's argument that it was absolved of culpability under the Dealers Act because it affirmatively warned Brown that her vehicle would be repossessed. The violation of the Dealers Act occurred in the methods it employed to procure financing for Brown and the fact that it failed to assist Brown in correcting its mistakes that caused the issues with the Mazda 6. In the words of the trial judge:

Dick Smith failed to verify the financing on the Mazda or provide Plaintiff with any additional information regarding the financing. Instead, Dick Smith showed Plaintiff an approval letter[7] from Sovereign Bank based on incorrect information and correlating to a loan in a different amount, pertaining to a different vehicle, and incorrectly listing Brown's income as $2,800 per month. Dick Smith did not inform Plaintiff that it had received the payment from Sovereign Bank. Dick Smith made no effort to assist Plaintiff regarding the paperwork on the Mazda. By failing to verify the financing of the proper vehicle and representing to Plaintiff that she was approved for financing on the vehicle she possessed, Plaintiff was treated in an unfair and deceptive manner by representatives of Dick Smith. Thus, irrespective of Plaintiff's interactions with Sovereign Bank, Dick Smith failed to act in good faith in its dealings with Plaintiff.

As evidenced by the above-quoted language, the trial judge concluded that Dick Smith acted in bad faith when it made no effort to assist Brown in correcting the financing paperwork or transferring collateral on the loan. We agree with this conclusion as Dick Smith failed to fulfill its obligation to timely arrange for substituting collateral or correcting Brown's loan documents.

Without dispute, the installment contract was contingent on third-party financing for a Mazda 6. Here, the record establishes that Dick Smith knowingly applied for, and received, financing for a Nissan Altima and not a Mazda 6. Assuming, without deciding, that this was an oversight on the part of Dick Smith, Dick Smith refused to assist in correcting the alleged mistake even after being advised that their assistance was necessary. Notably, Dick Smith's finance manager testified that a telephone call from Dick Smith was sufficient to transfer collateral. Yet, Dick Smith failed to perform this simple act.

Based on the foregoing, we agree with the trial judge's conclusion that Dick Smith violated the Dealers Act as it acted in bad faith and Brown was damaged by this action.

## IV. Conclusion

---

[7] The "approval letter" was actually just a computer print-out from the "DealerTracker" website.

Despite evidence in the record to support the trial judge's findings of fact, the Court of Appeals ignored those findings and substituted its own.  By doing so, the Court of Appeals exceeded its standard of review.  Accordingly, we reverse the Court of Appeals and reinstate the trial judge's decision.

**REVERSED.**

**KITTREDGE, HEARN, JJ., and Acting Justice James E. Moore, concur.  PLEICONES, Acting Chief Justice, concurring in result only.**