Quidore v. All. Plastics, LLC, 2020 NCBC 87.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

KEVIN QUIDORE,

              Plaintiff,

v.

ALLIANCE PLASTICS, LLC

              Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 23648


**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO DISMISS
DEFENDANT'S AMENDED
COUNTERCLAIMS**

1.     **THIS MATTER** is before the Court upon Plaintiff Kevin Quidore's ("Quidore") Motion to Dismiss Defendant Alliance Plastics, LLC's ("Alliance" or the "Company") Counterclaims (the "Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") in the above-captioned case. (ECF No. 48.)

2.     The Motion puts at issue the viability of Alliance's counterclaims against Quidore for fraud (the "Fraud Counterclaim") and negligent misrepresentation (the "Negligent Misrepresentation Counterclaim"; together with the Fraud Counterclaim, the "Counterclaims"). Alliance bases the Counterclaims on allegations that Quidore falsely represented his background and experience when he negotiated his employment with Alliance and thereafter misrepresented to Alliance management actions he took during his employment as the Company's Chief Operating Officer ("COO"). (Am. Answer & Countercl. ¶¶ 79–89, ECF No. 46.) Quidore moves to dismiss the Counterclaims, contending that Alliance has failed to plead certain required elements of the Counterclaims and has failed to plead either Counterclaim

with requisite particularity.  (Pl.'s Mot. Dismiss Def.'s Am. Countercls. 1–2 [hereinafter "Pl.'s Mot."], ECF No. 48.)

3.     Having considered the Motion, the Amended Answer and Counterclaim, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS** the Motion and **DISMISSES** Plaintiff's Counterclaims **with prejudice**.

> *Rayburn Cooper & Durham, P.A., by Ross R. Fulton and Matthew Tomsic, for Plaintiff Kevin Quidore.*
>
> *Morton & Gettys, LLC, by James Nathanial Pierce and Beverly A. Carroll, for Defendant Alliance Plastics, LLC.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

4.     The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) but rather recites only those facts alleged or admitted in the Amended Answer and Counterclaim relevant to the Court's determination of the Motion.

5.     Quidore is a citizen and resident of North Carolina, and Alliance is a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business located in York County, South Carolina. (Compl. ¶¶ 1–2, ECF No. 4; Am. Answer & Countercl. ¶¶ 6–7.)

6.     Quidore was contacted by Ronald Grubbs, Jr. ("Grubbs"), President of Alliance, in 2016 to discuss the possibility of Quidore becoming Alliance's COO. (Compl. ¶¶ 3, 7; Am. Answer & Countercl. ¶¶ 8, 12.)  From late 2016 through early

2017, Quidore and Grubbs negotiated the terms of Quidore's potential employment with Alliance. (Compl. ¶ 8; Am. Answer & Countercl. ¶ 13.)

7.      Alliance alleges that during these negotiations, Quidore made several false statements concerning (i) his position at a former employer, Unisource; (ii) the reason he left Unisource; (iii) his experience with ScanForce, a product management and ordering system; (iv) his connections with Citibank; and (v) his connections with vendors in Alliance's industry. (Am. Answer & Countercl. ¶ 80.) Unaware of the alleged falsity of these statements, on January 9, 2017, Grubbs sent Quidore an offer of employment, which Quidore accepted. Quidore began his employment as Alliance's COO a few months later. (Compl. ¶ 10; Am. Answer & Countercl. ¶¶ 15, 39.)

8.      While Quidore served as Alliance's COO, Alliance alleges that Quidore failed to carry out his duties and falsely stated to management that he had implemented ScanForce and conducted proper quality control testing. (Am. Answer & Countercl. ¶ 87.) On June 17, 2019, Alliance terminated Quidore's employment. (Compl. ¶ 27; Am. Answer & Countercl. ¶ 32.)

9.      Quidore initiated this action on December 12, 2019, alleging claims for breach of contract, fraud, and promissory estoppel against Alliance and, alternatively, against Grubbs, for failing to provide Quidore certain benefits after his termination. (Compl. ¶¶ 79–89.) Quidore subsequently dismissed his claims against Grubbs without prejudice on May 6, 2020. (Stipulation Dismissal Without Prejudice Claims Against Ronald Grubbs, Jr., ECF No. 25.)

10.    Alliance filed its initial Answer and Counterclaim on June 8, 2020, (Answer & Countercl., ECF No. 29), and its Amended Answer and Counterclaim on August 4, 2020, (Am. Answer & Countercl.).[1]

11.    Alliance's Fraud Counterclaim is focused on Quidore's pre-hiring conduct and alleges as follows:

> In November and December of 2016, and in early 2017, during the negotiations for his employment with Alliance, both in-person in Charlotte, North Carolina and Rock Hill, South Carolina, and via emails and phone calls, Quidore made false representations of existing facts, including but not limited to:
>
> > a. Quidore falsely represented he was an "Area Vice President" of Uni[s]ource, a former employer of Quidore, when in fact Quidore never rose above the level of general manager.
> >
> > b. Quidore falsely represented the reason he left Unisource, stating he chose to leave to pursue new opportunities when in fact he was dismissed for misappropriation of company funds.
> >
> > c. Quidore falsely represented he had substantial experience with ScanForce and had implemented ScanForce in other companies.
> >
> > d. Quidore falsely represented he had connections with Citi[b]ank and had previously negotiated beneficial order financing terms when, in fact, he never dealt directly with Citi[b]ank.
> >
> > e. Quidore falsely represented he had substantial connections with vendors in Alliance's industry.

(Am. Answer & Countercl. ¶ 80.)

---

[1] Quidore moved to dismiss the Answer and Counterclaim ("Original Motion to Dismiss") on July 2, 2020, (Pl.'s Mot. Dismiss Def.'s Countercls., ECF No. 35), and in response, Alliance moved to file an amended answer and counterclaim ("Motion to Amend"), (Def.'s Mot. Amend Answer & Countercl., ECF No. 39). The Court granted the Motion to Amend on August 3, 2020, (Order Def.'s Mot. Amend Answer & Countercl., ECF No. 45), and Alliance filed its Amended Answer and Counterclaim the next day, (Am. Answer & Countercl.). The Court subsequently denied the Original Motion to Dismiss as moot. (Order Denying Pl.'s Mot. Dismiss Def.'s Countercls. Moot & Notice Cancellation, ECF No. 47.)

12. Alliance also alleges, in conclusory fashion, that "Quidore knew the representations were false and deceptive[ ] and . . . deliberately made them to convince Alliance to hire him"; "Alliance was not aware of the falsity of the representations"; "Alliance justifiably relied on Quidore's statements[ ] and . . . could not have discovered the falsity of Quidore's representations"; and "[a]s a direct and proximate result of Quidore's false statements, Alliance has been damaged in an amount to be proved at trial[.]" (Am. Answer & Countercl. ¶¶ 81–84.)

13. Alliance's Negligent Misrepresentation Counterclaim focuses on Quidore's employment-related actions and alleges:

> Throughout his employment with Alliance, from the beginning of 2017 through July 2018, Quidore failed to carry out his duties, and in fact, misrepresented his actions in a variety of tasks to his superiors, including but not limited to:
>
> > a. Throughout his employment, but latest in August 2018, Quidore failed to implement Scan[F]orce, a product management and ordering system. Plaintiff was specifically instructed to implement Scan[F]orce, but failed to appropriately follow up on training dates with the Scan[F]orce representatives. Despite his failures, Plaintiff represented to management of Alliance that he had implemented Scan[F]orce and continued this misrepresentation for months.
> >
> > b. In or around September 2017, Quidore failed to conduct proper quality control testing. In the face of customer complaints regarding the quality of Alliance's product, Quidore falsely represented to Alliance management that he had conducted quality control testing, and the customer was clearly incorrect. Ultimately, the customer went to a third-party lab which corroborated the customer's stance. Ultimately, it was discovered Quidore never conducted quality testing of the product, though he had the ability to do so in-house. As a result, Alliance lost two large, long-time customers: Pratt Industries and Veritiv.

(Am. Answer & Countercl. ¶ 87.)

14.   Alliance further alleges, again in conclusory fashion, that "Alliance justifiably relied on Quidore's representations[;] . . . Quidore had a pecuniary interest in making the representations, as an effort to maintain employment with Alliance"; and "[a]s a direct and proximate result of Quidore's negligent misrepresentation, Alliance is entitled to damages[.]" (Am. Answer & Countercl. ¶¶ 88–89.)

15.   Alliance filed its Motion on September 2, 2020.  (Pl.'s Mot.)  After full briefing by the parties, the Court held a hearing on the Motion on November 5, 2020 via videoconference, at which all parties were represented by counsel.

16.   The Motion is now ripe for resolution.

II.

LEGAL STANDARD

17.   "A Rule 12(b)(6) motion allows a party to test the legal sufficiency of a complaint or counterclaim."  *Brady v. Prince*, 2015 NCBC LEXIS 5, at *16 (N.C. Super. Ct. Jan. 7, 2015) (citing *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).  "An inquiry into the sufficiency of a counterclaim to withstand a motion to dismiss under Rule 12(b)(6) is identical to that regarding the sufficiency of a complaint to survive the same motion."  *Chesapeake Microfilm, Inc. v. E. Microfilm Sales & Serv., Inc.*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 902 (1988).

18.   In reviewing a Rule 12(b)(6) motion, the Court must examine "whether the allegations of [a counterclaim], if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory."  *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736 (2018) (quoting *CommScope Credit*

*Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016)). Further, the Court is required to view the allegations in the challenged pleading "in the light most favorable to the non-moving party." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017) (quoting *Kirby v. N.C. DOT*, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016)).

19. Accordingly, the dismissal of a counterclaim under Rule 12(b)(6) "is proper when '(1) the [counterclaim] on its face reveals that no law supports the [defendant's] claim; (2) the [counterclaim] on its face reveals the absence of facts sufficient to make a good claim; or (3) the [counterclaim] discloses some fact that necessarily defeats the [defendant's] claim.'" *Corwin*, 371 N.C. at 615, 821 S.E.2d at 736–37 (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)); *see also Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 559, 681 S.E.2d 770, 774 (2009) (holding dismissal under Rule 12(b)(6) is not proper "unless it appears beyond doubt that the [non-moving party] could prove no set of facts in support of his claim which would entitle him to relief" (citation omitted)).

III.

ANALYSIS

20. Quidore contends that Alliance's Counterclaims necessarily fail under either North Carolina or South Carolina law.[2]

21. First, Quidore argues that Alliance's Fraud Counterclaim should be dismissed because Alliance has failed to allege that Quidore's alleged false statements were material, (Pl.'s Mem. 6–7), or that Alliance exercised, or was prevented from exercising, reasonable diligence in discovering the truth of those statements, (Pl.'s Mem. 7–12). Quidore also contends that Alliance's Fraud Counterclaim should be dismissed because it is not pleaded with requisite particularity, (Pl.'s Mem. 12–16), and because it is barred by the applicable three-year statute of limitations, (Pl.'s Mem. 22–25). Quidore further argues that Alliance's Negligent Misrepresentation Counterclaim should be dismissed for failure to allege that Alliance justifiably relied on Quidore's alleged statements, (Pl.'s Mem. 16–19), and for failure to plead with requisite particularity, (Pl.'s Mem. 19–22).

22. Alliance asserts that Quidore's arguments are without merit and that its Counterclaims should survive Rule 12(b)(6) dismissal. (Def.'s Mem. Opp'n 5–20.)

---

[2] The parties dispute whether North Carolina or South Carolina law applies to Alliance's Counterclaims. (Pl.'s Mem. Supp. Mot. Dismiss Def.'s Am. Countercls. 5 [hereinafter "Pl.'s Mem."], ECF No. 49; Def.'s Mem. Opp'n Pl.'s Mot. Dismiss Def.'s Am. Countercls. 2, 5 [hereinafter "Def.'s Mem. Opp'n"], ECF No. 52.) The Court elects not to decide choice of law at this stage in part because the Court concludes that the Counterclaims are insufficiently pleaded under either State's law.

A.     Alliance's Fraud Counterclaim

a.     Materiality

23.     Under North Carolina law, the essential elements of a claim for fraud are: "(1) False representation or concealment of a *material fact*, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (emphasis added) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (1974)).    "A claim for fraud may be based on an affirmative misrepresentation of a *material* fact, or a failure to disclose a *material* fact relating to a transaction which the parties had a duty to disclose." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (emphasis added) (citation and internal quotation marks omitted).

24.     Therefore, "the mere expression of an opinion or belief, or more precisely a representation which is nothing more than the statement of an opinion, cannot constitute fraud." *Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co.*, 258 N.C. 49, 52, 127 S.E.2d 759, 761 (1962) (citation omitted).    When a statement "at most reflects puffery," which cannot be proven true or false, there can be no "actionable fraud" because there is no allegation of a material fact. *McKee v. James*, 2014 NCBC LEXIS 74, at *27–28 (N.C. Super. Ct. Dec. 31, 2014); *see also Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 659 (1992) ("Requiring proof of a specific representation facilitates courts in distinguishing mere puffing, guesses, or assertions of opinions from representations of material facts."); *Beam v. Sunset Fin.*

*Servs.*, 2019 NCBC LEXIS 56, at \*15 (N.C. Super. Ct. Sept. 3, 2019) ("The alleged misrepresentations must also be definite and specific, meaning that they must be more than mere puffing[.]" (citation and internal quotation marks omitted)).

25. Under South Carolina law, the essential elements of a fraud claim are similar:

> (1) a representation; (2) its falsity; (3) *its materiality*; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993) (emphasis added) (citing *King v. Oxford*, 318 S.E.2d 125, 127 (S.C. Ct. App. 1984)). "Where the complaint omits allegations on any element of fraud," including materiality, "the trial court should grant the defendant's motion to dismiss the claim." *Id.*

26. As in North Carolina, "[a] false representation . . . must be one of fact as distinguished from the mere expression of an opinion." *Winburn v. Ins. Co. of N. Am.*, 339 S.E.2d 142, 145 (S.C. Ct. App. 1985). An allegation "cannot be construed to constitute fraud and deceit" when it "was merely 'dealer's talk' or 'puffing[.]' " *Jones v. Cooper*, 109 S.E.2d 5, 10 (S.C. 1959); *see also Brown v. Dick Smith Nissan, Inc.*, 777 S.E.2d 208, 211 n.5 (S.C. 2015) (" 'Puffing' is defined as: 'The expression of an exaggerated opinion — as opposed to a factual misrepresentation — with the intent to sell a good or service.' " (citation omitted)); *Turner v. Milliman*, 671 S.E.2d 636, 642 (S.C. Ct. App. 2009) ("[S]ales talk or 'puffing' ordinarily is not sufficient to establish a claim for negligent misrepresentation or fraud.").

27. Alliance alleges that Quidore falsely represented that "he had substantial experience with ScanForce[,]" that "he had connections with Citi[b]ank[,]" and that "he had substantial connections with vendors in Alliance's industry." (Am. Answer & Countercl. ¶ 80(c)–(e).) Rather than assert objective provable facts, however, Quidore's alleged statements reflect subjective opinion and assessment (and perhaps exaggeration) in these circumstances and are open to differing perceptions of what level or amount is "substantial" and what qualifies as a "connection[ ]."

28. As such, the Court concludes that these alleged representations are not material as a matter of law and, as asserted here, cannot support a fraud claim under North Carolina law. *See, e.g.*, *Glob. Hookah Distribs. v. Avior, Inc.*, 401 F. Supp. 3d 653, 659 (W.D.N.C. 2019) (holding, under North Carolina law, that "[t]he line between corporate optimism and material statements falls where the statements at issue were specific factual allegations that were not simply sales pitches but rather can be proven true or false — and, if properly supported, could be found material by a reasonable jury." (citation and internal quotation marks omitted)); *see also, e.g.*, *Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*, No. 7:18-CV-10-BO, 2020 U.S. Dist. LEXIS 218836, at *21–22 (E.D.N.C. Nov. 23, 2020) (holding that "defendants' statements that they had the 'cleanest restaurants in America' and that plaintiffs would receive 'world class,' 'endless,' and 'social media savvy' support were nonactionable puffery" under North Carolina law); *Solum v. CertainTeed Corp.*, 147 F. Supp. 3d 404, 412–13 (E.D.N.C. 2015) (holding statements that the defendant's craftsmen had a "high level of knowledge and ability" and held a "highly prestigious"

designation only available after a "rigorous course" to be puffery under North Carolina law).

29.     The Court reaches the same conclusion under South Carolina law. *See, e.g.,* *Hovis v. Gen. Dynamics Corp. (In re Marine Energy Sys. Corp.)*, 362 B.R. 247, 260 (Bankr. D.S.C. 2006) (holding, under South Carolina law, that "[r]epresentations relating to the 'skill' of a party are generally considered to be puffery and not actionable as a fraudulent representation"); *Winnsboro v. NCR, Inc.*, C/A No. 3:91-0070-17, 1991 U.S. Dist. LEXIS 6021, at *6–7 (D.S.C. Apr. 9, 1991) (holding statement that the defendants "could furnish plaintiff with a combination of hardware and software which would meet all of plaintiff's needs and specifications" to be puffery under South Carolina law).

30.     The Court therefore concludes that Alliance's Fraud Counterclaim should be dismissed to the extent it is based on paragraphs 80(c), (d), and (e) of the Counterclaims as discussed above.[3]

      b.     <u>Reasonable Reliance</u>

31.     Reasonable reliance cannot be established as a matter of North Carolina law "where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Sullivan v. Mebane Packaging Grp., Inc.*, 158

---

[3] The only portions of the Fraud Counterclaim within paragraphs 80(c)–(e) that shall not be dismissed for lack of materiality are Alliance's allegations that Quidore falsely represented that he had "implemented ScanForce in other companies[,]" (Am. Answer & Countercl. ¶ 80(c)) and he had "previously negotiated beneficial order financing terms [with Citibank,]" (Am. Answer & Countercl. ¶ 80(d)). As discussed *infra*, however, these and the other allegations pleaded in support of the Fraud Counterclaim are not pleaded with the particularity required under Rule 9(b), requiring dismissal.

N.C. App. 19, 26, 581 S.E.2d 452, 458 (2003); *see also Everts v. Parkinson*, 147 N.C. App. 315, 325, 555 S.E.2d 667, 674 (2001) ("The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest." (quoting *Calloway v. Wyatt*, 246 N.C. 129, 135, 97 S.E.2d 881, 886 (1957))). Indeed, "when the party relying on the false . . . representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999).

32. Again, South Carolina law is similar, as "there is no right to rely, as required to establish fraud, where there is no confidential or fiduciary relationship and there is an arm's length transaction between mature, educated people." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 445 (S.C. Ct. App. 2003). Any "right of reliance upon representations is closely bound up with a duty on the part of the plaintiff to use some measure of protection and precaution to safeguard his own interest." *Id.* As stated by the South Carolina Supreme Court, "one cannot rely upon [the] misstatement of facts[] if the truth is easily within his reach." *O'Shields v. S. Fountain Mobile Homes, Inc.*, 204 S.E.2d 50, 52 (S.C. 1974); *see also Dehart v. Dodge City*, 427 S.E.2d 720, 722 (S.C. Ct. App. 1993) ("Courts do not sit for the purpose of relieving parties who refuse to exercise reasonable diligence or discretion to protect their own interests.").

33. The reasonableness of a party's reliance "[is] ordinarily [a] question[ ] for the jury 'unless the facts are so clear that they support only one conclusion.' " *Head*

*v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9, 812 S.E.2d 831, 837 (2018) (citation omitted); *see also Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 401 S.E.2d 153, 155 (S.C. 1991) ("The general rule is that questions concerning reliance and its reasonableness are factual questions for the jury."). But under Rule 12(b)(6), "where the facts are insufficient as a matter of law to constitute reasonable reliance on the part of the complaining party, the complaint is properly dismissed[.]" *Hudson-Cole Dev. Corp.*, 132 N.C. App. at 346, 511 S.E.2d at 313.

34. Alliance alleges that Quidore falsely represented that "he was an 'Area Vice President' of Uni[s]ource . . . when in fact Quidore never rose above the level of general manager" as well as "the reason he left Unisource, stating he chose to leave to pursue new opportunities when in fact he was dismissed for misappropriation of company funds." (Am. Answer & Countercl. ¶ 80(a)–(b).) Quidore argues that dismissal is proper because Alliance "did not allege any reason why—at any time during the three-plus months it took to negotiate Quidore's employment with Alliance Plastics—it 'could not have,' with reasonable diligence, confirmed the truth or falsity of Quidore's alleged fraudulent representations." (Pl.'s Mem. 9.) The Court agrees.

35. The Delaware Chancery Court's observation in deciding a similar issue under a Pennsylvania securities fraud statute on similar pleaded facts applies with equal force here:

> [I]t is not clear what reasonable care means in the context of hiring a top executive who will exercise fiduciary duties if it does not include some form of minimal resume-checking. Here, all Katz had to do was to conduct a cursory check of Robins's employment experience to find out that Robins was not as Katz had advertised to the plaintiffs. Once Katz

probed a bit, Robins's true track record would have been quickly revealed.

*Kronenberg v. Katz*, 872 A.2d 568, 601–02 (Del. Ch. 2004). Even though Alliance alleges, in conclusory fashion, that it "justifiably relied on Quidore's statements" and "could not have discovered the falsity of Quidore's representations[,]" (Am. Answer & Countercl. ¶ 83), Alliance fails to allege any facts to support these conclusory assertions or that Alliance was somehow denied the opportunity to investigate the truth of Quidore's alleged misstatements.

36. Alliance alleges that it was hiring Quidore to be the Company's COO—one of Alliance's top corporate officers—who would have "a duty to represent the best interests of Alliance in terms of his dealings with Alliance, Alliance's management, and other employees, customers, and vendors of Alliance." (Am. Answer & Countercl. ¶ 86.) Alliance could have easily contacted Unisource to ascertain the truth of Quidore's representations, and its failure to plead that it did so or that it took, or was prevented from taking, any other measures to investigate Quidore's stated work experience—experience Alliance now claims was essential to its decision to hire Quidore—is fatal to its fraud claim.

37. Accordingly, the Court concludes that Alliance has failed to plead facts supporting reasonable reliance, and its Fraud Counterclaim must therefore be dismissed to the extent it is based on Quidore's alleged misrepresentations in paragraphs 80(a) and (b) of the Counterclaims.

c.    Pleading with Particularity

38.    Quidore also seeks dismissal of Alliance's Fraud Counterclaim for failure to plead the Counterclaim with requisite particularity under Rule 9(b).

39.    Rule 9(b) provides: "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." N.C. R. Civ. P. 9(b).[4] Rule 9(b)'s purpose includes "to protect a defendant from unjustified injury to his reputation by requiring more particularity than is normally required by notice pleading[,]" *Terry*, 302 N.C. at 85, 273 S.E.2d at 678, to "ensure[ ] that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . [, to] protect defendants from frivolous suits[, and to] eliminate fraud actions in which all the facts are learned after discovery[,]" *Perkins v. HealthMarkets, Inc.*, 2007 NCBC LEXIS 25, at \*14–15 (N.C. Super. Ct. July 30, 2007) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

40.    "[T]o survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint for fraud must allege with particularity all material facts and circumstances constituting the fraud." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 481, 593 S.E.2d 595, 598 (2004) (quoting *Carver v. Roberts*, 78 N.C. App. 511, 513, 337 S.E.2d

[4] There is no dispute that the procedural law of North Carolina, including Rule 9(b), applies to the Counterclaims. *See Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988) (stating that "[o]ur traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum").

126, 128 (1985)); *see also BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 298, 826 S.E.2d 746, 760 (2019) ("Material facts and circumstances constituting fraud must be [pleaded] in a complaint with particularity. Mere generalities and conclusory allegations of fraud will not suffice." (citation omitted)). That said, "there is no requirement that any precise formula be followed or that any certain language be used." *Carver*, 78 N.C. App. at 513, 337 S.E.2d at 128. "It is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts." *Id.* (quoting *Brooks Equip. & Mfg. Co. v. Taylor*, 230 N.C. 680, 686, 55 S.E.2d 311, 315 (1949)).

41. To satisfy Rule 9(b)'s requirements, a fraud claim must contain allegations identifying the (i) "the time, place and content[ ] of the fraudulent representation"; (ii) "the identity of the person making the representation"; and (iii) "what was obtained by the fraudulent acts or representations." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678. "Dismissal of a claim for failure to plead with particularity is proper where there are no facts . . . setting forth the time, place, or specific individuals who purportedly made the misrepresentations." *USA Trouser, S.A. de C.V. v. Williams*, 258 N.C. App. 192, 202, 812 S.E.2d 373, 380 (2018) (quoting *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006)).

42. Alliance alleges that Quidore made five specific false representations "[i]n November and December of 2016, and in early 2017, during the negotiations for his employment with Alliance, both in-person in Charlotte, North Carolina and Rock Hill, South Carolina, and via emails and phone calls[.]" (Am. Answer & Countercl.

¶ 80.) Alliance thus identifies three different forms of communication, two different locations, and a time period of at least three months but does not attempt to specifically identify how, where, or when each of the five specific misrepresentations were made. Although "[a] requirement of specificity is not a requirement of perfect and complete specificity[,]" *Hudgins v. Wagoner*, 204 N.C. App. 480, 487, 694 S.E.2d 436, 443 (2010), Alliance's failure to specify further how, where, or when the specific representations at issue were made here denies Quidore an adequate opportunity to prepare his defense and thus fails Rule 9(b)'s particularity requirements, necessitating dismissal, *see, e.g.*, *Chisum v. Campagna*, 2017 NCBC LEXIS 102, at *30–31 (N.C. Super. Ct. Nov. 7, 2017) (holding that fraud was not pleaded with particularity when, "[w]ith regard to the 2007 capital calls, Plaintiff d[id] not specify when or where the misrepresentations took place, alleging only that they occurred '[i]n or around 2007' ").

43. Indeed, dismissal under Rule 9(b) is all the more appropriate here because Alliance also fails to identify to whom at Alliance Quidore made the alleged misrepresentations—a further failure of pleading in these circumstances that leaves Quidore without adequate notice of the specific conduct about which Alliance complains. *See, e.g.*, *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 376 (5th Cir. 2004) (dismissing for lack of particularity under Rule 9(b) of the Federal Rules of Civil Procedure because " 'meetings with upper management' is too vague of an indication of where or *to whom* the alleged comment was made" (emphasis added)).

44.	The Court thus separately concludes that Alliance's Fraud Counterclaim should be dismissed in its entirety for failure to plead with requisite particularity under Rule 9(b).[5]

B.	Alliance's Negligent Misrepresentation Counterclaim

a.	Justifiable Reliance

45.	Under North Carolina law, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Hudson-Cole Dev. Corp.*, 132 N.C. App. at 346, 511 S.E.2d at 313 (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988)); *see also Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 586, 581 S.E.2d 68, 74 (2003) ("As essential elements of negligent misrepresentation, the [plaintiffs] must prove that (1) [the defendant] owed a duty of care to the [plaintiffs], and (2) that the [the plaintiffs] justifiably relied on [the defendant] for accurate information.").

46.	Like a counterclaim for fraud, when a counterclaim for negligent misrepresentation "fails to allege that [the defendant] was denied the opportunity to investigate or that [the defendant] could not have learned the true facts by exercise of reasonable diligence," the counterclaim must be dismissed. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). And as with fraud, "[a] party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." *Dallaire v. Bank*

---

[5] In light of the Court's rulings, the Court declines to address Quidore's contention that Alliance's Fraud Counterclaim should be dismissed as time-barred.

*of Am., N.A.*, 367 N.C. 363, 369, 760 S.E.2d 263, 267 (2014); *see also Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 532–33, 537 S.E.2d 237, 240 (2000) ("[T]o withstand defendants' motion to dismiss, plaintiffs at bar must be able to show that they *justifiably* relied – to their detriment – on the information provided them by defendants and that defendants owed plaintiffs a duty of care to be certain that the information provided was complete and accurate."), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 18 (2001).

47.     Once again, South Carolina law is substantially the same:

> To establish liability for negligent misrepresentation, the plaintiff must show "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff *justifiably relied* on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation."

*Sauner v. Pub. Serv. Auth.*, 581 S.E.2d 161, 166 (S.C. 2003) (emphasis added) (quoting *AMA Mgmt. Corp. v. Strasburger*, 420 S.E.2d 868, 874 (S.C. Ct. App. 1992)); *see also Gruber v. Santee Frozen Foods, Inc.*, 419 S.E.2d 795, 799 (S.C. Ct. App. 1992) ("What we do know about the law of reliance in these cases is that the plaintiff must not only rely upon the negligently made misrepresentation but his reliance must be justifiable under the circumstances.").

48.     South Carolina courts further "hold that reliance can only be justified in [negligent misrepresentation] cases if the relationship of the parties is such that the defendant occupies a superior position to the plaintiff with respect to knowledge of the truth of the statement made." *Gruber*, 419 S.E.2d at 799–800. Additionally,

"[t]here is no liability for . . . matters which plaintiff could ascertain on his own in the exercise of due diligence." *Gecy v. S.C. Bank & Tr.*, 812 S.E.2d 750, 758 (S.C. Ct. App. 2018) (quoting *Quail Hill, LLC v. Cty. of Richland*, 692 S.E.2d 499, 508 (S.C. 2010)); *see also Alpha Contracting Servs. v. Household Fin. Corp.*, No. 2011-UP-289, 2011 S.C. App. Unpub. LEXIS 348, at *8 (S.C. Ct. App. June 13, 2011) ("Alpha cannot obtain compensation from Respondents if it has not exercised its own due diligence."); *Harrington v. Mikell*, 469 S.E.2d 627, 629 (S.C. Ct. App. 1996) ("[T]here can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter.").

49.     Here, Alliance alleges that Quidore misrepresented "to management of Alliance that he had implemented Scan[F]orce and continued this misrepresentation for months" and "falsely represented to Alliance management that he had conducted quality control testing[.]"  (Am. Answer & Countercl. ¶ 87.)  Alliance's allegations of justifiable reliance on these alleged statements are conclusory and scant: "Alliance justifiably relied on Quidore's representations, and Quidore had a pecuniary interest in making the representations, as an effort to maintain employment with Alliance." (Am. Answer & Countercl. ¶ 88.)

50.     Alliance nowhere pleads facts—or even conclusory assertions—that Alliance could not have learned the true facts by exercising reasonable diligence or that Quidore was in a superior position to know the truth of the alleged statements.  This is particularly problematic here since Quidore's alleged misrepresentations concern Alliance's internal business operations, specifically that software and quality control testing had been implemented at the Company.  Alliance does not plead that Quidore

concealed from Alliance's management and employees that software and testing had not been implemented. Alliance also does not plead that Alliance was unable to learn of the status of these projects at its own facility for some other reason. Alliance simply relies on a conclusory assertion that it acted with justifiable reliance without pleading any facts in support. Such is insufficient to sustain its Negligent Misrepresentation Counterclaim as a matter of either North Carolina or South Carolina law.

b.    Pleading with Particularity[6]

51.    "[T]his Court and North Carolina's federal district courts have consistently held that plaintiffs are required to plead claims for negligent misrepresentation with the particularity required by Rule 9(b)." *Value Health Sols. Inc. v. Pharm. Research Assocs.*, 2020 NCBC LEXIS 65, at *29 (N.C. Super. Ct. May 22, 2020); *see also, e.g.*, *Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, at *20 (N.C. Super. Ct. Jan. 28, 2015) (holding that "[a]llegations of . . . negligent misrepresentation must be stated with particularity"); *Topshelf Mgmt. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727 (M.D.N.C. 2015) ("Federal courts have repeatedly found that the North Carolina tort of negligent misrepresentation sounds in fraud and have applied Rule 9(b) to it.").

52.    Alliance has failed to satisfy Rule 9(b) here. Indeed, Alliance has not even attempted to plead where or how Quidore made the alleged negligent misrepresentations on which Alliance relies. As to "when," Alliance avers only that

---

[6] Although not necessary in light of the Court's dismissal of Alliance's Negligent Misrepresentation Counterclaim for failure to plead justifiable reliance, the Court nonetheless elects to consider Quidore's separate Rule 9(b) argument as a further or alternative basis for dismissal.

Quidore failed to implement ScanForce "[until] August 2018" but fails to plead when Quidore made any alleged misrepresentation that he had implemented ScanForce at the Company. (Am. Answer & Countercl. ¶ 87(a).) Similarly, although Alliance alleges Quidore failed to conduct quality control testing "[i]n or around September 2017," Alliance again fails to plead when Quidore made any alleged misrepresentation that he had conducted such testing. (Am. Answer & Countercl. ¶ 87(b).) And as "to whom," Alliance suggests only that Quidore's statements were to "Alliance management" and fails to identify the specific person to whom Quidore is alleged to have spoken. (Am. Answer & Countercl. ¶ 87.)

53. Alliance's failure to allege the time, place, and method of Quidore's alleged statements necessarily dooms Alliance's Negligent Misrepresentation Counterclaim under Rule 9(b). *See, e.g.*, *Bybee v. Island Haven, Inc.*, No. COA17-859, 2018 N.C. App. LEXIS 787, at *14 (N.C. Ct. App. Aug. 7, 2018) (affirming dismissal under Rule 9(b) when "the allegation of the time [of the] [representations was] too indefinite [as it] convey[ed] no precise idea as to time" and there was "no reference to any place where Plaintiff spoke" (citation omitted)); *Bob Timberlake Collection*, 176 N.C. App. at 39, 626 S.E.2d at 321 (holding "[d]efendant failed to sufficiently plead . . . with the required particularity" because he did not "specifically allege where or when he received the information"); *Alamance Fam. Prac., P.A. v. Lindley*, 2018 NCBC LEXIS 83, at *31–32 (N.C. Super. Ct. Aug. 14, 2018) (affirming dismissal under Rule 9(b) for failure to plead "where or how" representations were made). And Alliance's failure to plead to whom Quidore made his alleged misrepresentation provides a further

basis for dismissal of this claim under Rule 9(b). *See, e.g., Southland Sec. Corp.*, 365 F.3d at 376.

54.    For this separate and independent reason, therefore, the Court concludes that Alliance's Negligent Misrepresentation Counterclaim should be dismissed.

IV.

CONCLUSION

55.    **WHEREFORE**, for each of the reasons set forth above, the Court hereby **GRANTS** Quidore's Motion and **DISMISSES** Alliance's Counterclaims against Quidore **with prejudice**.[7]

SO ORDERED, this 3rd day of December, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[7] Given that Alliance has already repleaded its Counterclaims—with the benefit of Quidore's Original Motion to Dismiss and supporting brief, (ECF Nos. 35–36)—the Court declines to afford Alliance a third opportunity to plead its Counterclaims and thus, in the exercise of its discretion, dismisses the Counterclaims with prejudice.